Mrs. Frankie Lou Smith PRICHARD, Independent Executrix of the Estate of Houston Smith, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 23931.

United States Court of Appeals
Fifth Circuit.

June 20, 1968.

George E. Ray, Dallas, Tex., for appellant.

Melvin M. Diggs, U. S. Atty., Fort Worth, Tex., Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Richard C. Pugh, Act. Asst. Atty. Gen., Meyer Rothwacks, Lee A. Jackson, Gilbert E. Andrews, Jeanine Jacobs, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before BELL, GODBOLD and DYER, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from a judgment that appellant executrix is not entitled to refund of an alleged overpayment of estate tax on the estate of Houston Smith, 255 F.Supp. 552 (N.D.Texas 1966).[1] The case concerns application of § 2042 of the Internal Revenue Code, 26 U.S.C.A. § 2042. The district court found for the government under sub-sections (1) and (2) of § 2042. We affirm on the basis of sub-section (2), which requires inclusion in the gross estate of proceeds from insurance payable to beneficiaries other than the estate if the decedent possessed at the time of his death any incidents of ownership in the insurance. This makes unnecessary any discussion of sub-section (1).

The decedent, a building contractor, was a resident of Texas, a community property state. He approached Great Southern Life Insurance Company for permanent mortgage financing on a shopping center which he proposed to construct in Texas. Great Southern stated as one of its conditions for making the loan that Smith secure from it $250,000 of insurance on his life to be assigned as additional collateral. Immediately Smith applied for such a policy, on the application showing Great Southern as the proposed beneficiary and owner. The local Great Southern agent wrote on the application that the insurance was to be assigned to the company if the loan, then pending for approval, was approved. The company notified Smith it did not wish to be named beneficiary and owner, that an absolute assignment to it would be required. Mrs. Smith then was named beneficiary and owner.

Great Southern issued a commitment letter in a form usual in this type of transaction, committing the company to make a loan of $575,000 to Mr. and Mrs. Smith, secured by mortgage on the real estate and improvements of the shopping center.[2] It contained a specific condition requiring that the $250,000 of insurance be absolutely assigned as additional collateral. Smith paid Great Southern a "standby fee" of $5,750 for the commitment. Using the commitment to show that permanent financing had been arranged, Smith obtained interim financing from a bank for construction of the center.

Great Southern issued its policy on November 4, 1957 showing as beneficiary the wife if living, otherwise the surviving children of Smith by his said wife. The policy was ordinary life, with endowment at age 90. Smith was age 42 at issue. As part of the policy when issued there was attached a supplemental provision stating:

> The application for this policy having been made by Houston Smith, Jr., insured, it is understood and agreed that the applicant having designated Frankie Lou Smith—wife—as the beneficiary to control this policy, it is understood and agreed that Frankie Lou Smith—wife—is the sole owner of this policy and shall have the power to exercise all of the privileges, benefits, rights and options granted to the insured in the policy.

The policy was delivered to either Mr. or Mrs. Smith, the record is not clear which.

On November 6 Great Southern wired its local loan representative that the leases [to shopping center tenants] had been approved, the loan approved, and the life insurance issued. Promptly thereafter construction of the center began. It was built larger than originally

---

1. The decision of the district court is discussed in Thies, Prichard Decision Confuses Estate Taxation of Life Insurance Receivable by the Executor, 25 J. of Taxation 291 (1966).

2. The commitment was for a 15-year mortgage, and it included conditions of completion of improvements, inspection and acceptance of improvements by Smith and Great Southern and the chief tenants, payment for all labor and material bills, survey, execution of satisfactory leases by tenants, and other normal requirements.

planned. Great Southern agreed to increase its commitment to $615,000 and issued a second commitment letter, making no charges except those necessitated by the new amount and containing a condition that the described $250,000 policy be absolutely assigned as collateral.

Under the terms of the policy any assignment of it had to be by Mrs. Smith as owner. (By other policy terms the right to make policy loans and the right to surrender the policy for its cash value also were in her as owner.)

The Great Southern loan to the husband-wife community was closed July 7, 1958 when the center was complete. Necessary papers had been prepared by Great Southern; they included an absolute assignment of the insurance policy, prepared for the signatures of Mr. and Mrs. Smith, which was signed by them at the closing and delivered to Great Southern. Under the terms of the assignment Great Southern was given a lien upon the policy and the proceeds.[3] The rights of the beneficiary were expressly made subordinate to Great Southern's rights under the assignment.

On July 15 Smith sent the original policy to Great Southern, which as assignee was entitled to possession of it. In June, 1959, Great Southern returned the policy to Smith with a form letter saying that it need no longer be held in the company's possession, that the existence of the absolute assignment had been noted on the policy and would be released when the secured indebtedness was retired.

Smith was killed in an automobile accident on July 2, 1960. The unpaid balance on the indebtedness at this time was $565,929.84. At the request of Mrs. Smith the company agreed to release to her $150,000 of the proceeds of the policy rather than applying all to the secured indebtedness as the company was entitled. The company stated it was doing this "in order that it may be of some assistance to you in meeting the taxes that will be assessed against the Estate of your husband." The other $100,000 was applied against the debt.

Appellant timely filed an estimated tax return. No portion of the $250,000 policy proceeds was included in the gross estate, but the entire amount of the unpaid indebtedness on the loan at the time of Smith's death was listed as a mortgage debt due Great Southern and was sought to be deducted under § 2053(a) (4). On examination the commissioner included in the estate $125,000, one-half of the policy proceeds, and allowed deduction of one-half the outstanding balance on the mortgage loan.

Appellant paid the tax and sued for refund. From that unsuccessful suit comes this appeal.

The statute makes no attempt to define incidents of ownership. The regulations provide:

> [T]he term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc.

3. In case of default on the mortgage note Great Southern was authorized to make policy loans or surrender the policy and withdraw the cash value, applying to the note proceeds so collected. If the proceeds became payable as a death claim Great Southern had the right, regardless of whether there had been a default in the note payments, to collect the proceeds, to apply them to any default existing, and, at its option, to apply the remainder to the payment of the last maturing installments owing on the indebtedness although not then due. Great Southern's rights under the assignment could be exercised without the necessity of resorting to, and without regard to, other security.

Treas.Reg. § 20.2042(1) (c). See generally Lowndes & Kramer, Federal Estate and Gift Taxation §§ 13.6–13.8 (2d ed. 1962). This court, in Commissioner of Internal Revenue v. Chase Manhattan Bank, 259 F.2d 231 (5th Cir. 1958), refers to incidents of ownership as the whole bundle of the rights in a policy except the right to the proceeds, including

> "the economic benefits of the insurance, the cash surrender value, the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign the policy or revoke an assignment, the power to pledge the policy for a loan, the power to obtain from the insurer a loan against the surrender value of the policy."

259 F.2d at 246, quoting from Benjamin & Pigman, Federal Estate and Gift Taxation of Louisiana Life Insurance, 28 Tul.L.Rev. 243, 247 (1954).

Section 2042(2) does not require that the decedent must have retained incidents of ownership in the insurance until his death, only that he possessed incidents of ownership at death. The language of the statute so provides. See also Lowndes & Kramer, supra § 13.6.[4]

■ We agree fully with the conclusion of the district court that decedent enjoyed incidents of ownership which required judgment be entered for the government, although our conclusion is based on different grounds.[5]

■■ Under Texas law a conveyance by husband to wife makes the property conveyed the wife's separate property, so that the quantum of Mrs. Smith's ownership of the policy, as a matter of state title law, was complete and sole. McAdams v. Ogletree, 348 S.W.2d 75 (Tex.Civ.App.1961); Reed v. Reed, 283 S.W.2d 311 (Tex.Civ.App.1955). But we do not close our eyes to the realities. From the initial statement by Great Southern of what its conditions would be, and up to the time of Smith's death, the insurance policy and the loan were indispensable parts of an integrated transaction. The negotiations and the course of the loan transactions, the correspondence, and the other documents, admit of only one conclusion. Although Mrs. Smith was designated as owner we would be wholly unrealistic to conclude anything other than that she was named as owner under the understanding, agreement and arrangement that the policy must be assigned when the community loan was ready to be closed. The requirement that the policy be obtained and assigned was imposed before application was made for the insurance. The intent that it be assigned was reported by the agent on the original application, which was before the matter arose of Mrs. Smith's being named owner. Without an assignment by her there could be no loan to the community, and without the permanent loan the interim lender (who loaned on the faith of the Great Southern commitment for a permanent loan) could not be paid. There is no evidentiary support for any thesis that Mrs. Smith acted from a donative intent, or was lending collateral to the community, or from any intent other than carrying out the business arrangements which had been made. There is no evidence that she paid any premium. While the facts here hardly call for it, we note that we are bound to give effect

---

4. Compare the wording of § 2037, which requires that a reversionary interest be retained.

5. The district court described the loan as being to Smith and as contingent on an assignment of the policy by him, and referred to the assigment as having been made by him and to his possessing incidents of ownership in making the assignment. Commitment and loan were to the community, and, under the terms of the policy and commitment read together, assignment by the wife as owner was requisite. The critical time for determining whether decedent possessed incidents of ownership was at the time of death, not at the time of assignment. 26 U.S.C.A. § 2042(2); First National Bank of Birmingham, Alabama v. United States, 358 F.2d 625 (5th Cir. 1966).

to substance over form. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945).

■ Appellant emphasizes that the loan was closed eight months after Mrs. Smith was named owner, that had the loan never been closed the policy would have remained in force so long as the premiums were paid, that had Smith died before the loan was closed the policy would have been the property of Mrs. Smith, and had she died before the loan was closed, her husband surviving, the cash surrender or replacement value of the policy would have been includable in her estate.[6] A husband may unconditionally make his wife the owner and beneficiary of an insurance policy on his life when it is issued, or later if he desires, so as to bar inclusion of it in his estate. Commissioner of Internal Revenue v. Estate of Noel, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965). The lapse of eight months, and the rights of the wife during that time, are evidentiary only; they are of little force here, since this was the period during which the center was being built under interim financing which was to be paid off out of the Great Southern loan upon completion.

Also appellant seems to contend that as a matter of law there was no incident of ownership in Smith at his death because the assignment had been made two years previously and any power or control that he may have had over the policy had been exhausted when the assignment was executed and delivered. But the arrangement existed for such a pledge or assignment to be made, and it was made, and the substantial economic benefit to the husband of having the policy stand as collateral for the community debt then commenced and continued up to his death. Smith's separate property could be liable for the community debt, 30 Tex.Jur.2d § 124, and the assigned policy stood between his estate and that possible liability. (Possibly if his estate were subjected to liability it could seek reimbursement from the community estate, id. § 134, but the economic benefit of protective insulation from a possible claim is not dissipated by the hope that if one is without the protection and has to pay he may—or may not—ultimately be made whole.)

An owner may lend collateral. Under different circumstances than in this case a wife who has become the absolute owner of an insurance policy on her husband's life, her husband no longer having any incidents of ownership therein, could assign it as collateral for a community debt and the husband would commence enjoying economic benefit from the time the assignment is made. Whether this alone would bring the policy within the husband's estate is a question for another case. It is not what happened in this case where in the total transaction there were incidents of ownership at all times, an unconsummated arrangement for eight months followed by the continuing economic benefit of the completed assignment.

There was testimony, though somewhat sparse, of the wife that during a period of about six months before discussion of the mortgage with Great Southern she and her husband discussed with various insurance agents the purchase of a large amount of insurance on his life to replace earlier policies which he had dropped; the Smiths felt they might afford the premiums which previously they had been unable to keep up, and the two of them saw in insurance a means of saving for the education of their children. This too was only evidentiary, and even if these family motivations were present they did not preclude the use of the policy in the manner that was required, arranged for and carried out.

Because we affirm under § 2042(2) we do not discuss the applicability of § 2042(1).

The decision of the district court is Affirmed.

6. See Estate of Donaldson v. Commissioner, 31 T.C. 729 (1959).