423 F.2d 1286
 The FIRST NATIONAL BANK OF MIDLAND, TEXAS and Jewell Mathers, Co-Independent Executors and Co-Trustees of the Estate of Olen D. Mathers, Deceased, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 27663.
 United States Court of Appeals, Fifth Circuit.
 March 23, 1970.
 
 William Monroe Kerr, Midland, Tex., for appellants-plaintiffs.
 Paul M. Ginsburg, Jonathan S. Cohen, Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Attys., Tax Div., U. S. Department of Justice, Washington, D. C., William W. Guild, Tax Div., U. S. Dept. of Justice, Fort Worth, Tex., Ernest Morgan, U. S. Atty., San Antonio, Tex., for defendant-appellee.
 Before GEWIN, COLEMAN, and DYER, Circuit Judges.
 COLEMAN, Circuit Judge.
 
 
 1
 Does Section 2035 of the Internal Revenue Code [26 U.S.C.A. § 2035][1] authorize or require the inclusion in an insured's gross estate of any part of the death proceeds of an insurance policy when that policy is owned by another but upon which the non-owning insured has paid part of the premiums within three years of his death. That is the sole issue in this appeal. The District Court held in the affirmative, but we must disagree.
 
 
 2
 On October 19, 1953, the Franklin Life Insurance Company issued to Naomi Clydene Maxwell, on her application, its $10,000 policy on the life of her father, Olen D. Mathers. She was thereafter the owner of the policy at all times until her father's death.
 
 
 3
 On the same date and in like manner, the Company issued to Boyce Mathers Blakeney, on her application, its $10,000 policy on the life of her father, the decedent. She, too, continued to own the policy at all times until his death.
 
 
 4
 Mr. Mathers died March 9, 1961. From 1953 to 1960 he and his wife, out of community funds (Texas), paid the premiums on the policies. This being the case, the Government claims that 3/8 of ½ of the proceeds of each policy should be included in the gross estate of the decedent, i. e., premiums for three years of the eight apportioned against half the proceeds since the premiums came from community funds. The Estate concedes that had there been proper pleadings in the refund suit the United States could have been entitled to include the premiums paid, the amount by which the estate had been depleted by the premium gifts made within three years of death. That issue, however, is not before us and we consider only the inclusion of the specified policy proceeds.
 
 
 5
 So far as we know, or have been informed by counsel, this issue has not been submitted to or decided by any federal appellate court.
 
 
 6
 It has been the subject of extensive law review notice.[2]
 
 
 7
 It has been considered and decided by one District Court, contrary to the contentions of the Government, Gorman v. United States, (E.D.Michigan, 1968) 288 F.Supp. 225. An appeal to the Sixth Circuit was dismissed by agreement of the parties.
 
 
 8
 We are not dealing with a case in which the policy itself was transferred. From inception to maturity the Mathers policies were owned by the daughters.
 
 
 9
 Section 2035, supra, provides that the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (emphasis ours) * * * in contemplation of death.
 
 
 10
 The Government first points out that gifts made by a decedent in contemplation of death are includible in his gross estate at their value as of the date of his death as though the decedent had continued to own them, the point being that if decedent had used the money to purchase stock which had increased in value prior to his death, the stock would have been included in his estate at its increased value.
 
 
 11
 The Government also points out that a gift of an insurance policy (e. g. single premium policy) in contemplation of death is included in decedent's estate at its face value. Likewise, if a decedent pays each annual premium on a life insurance policy insuring his own life and transfers the policy in contemplation of death after paying the last premium prior to his death, the entire amount of the death proceeds is included in his estate.
 
 
 12
 The third point made by the Government is that payment of life insurance premiums by decedent on policies owned by his daughters transferred "insurance benefits" to them for federal estate tax purposes. The Government here concedes that value of the decedent's payments at the time they were made was was their dollar value, as contended by taxpayer. However, the Government explains that the "property or interest in property" actually transferred to the daughters through the agency of the insurance company, was not the cash amount of the premium payments, but a bundle of rights under the insurance contract. These rights included the ability to borrow against the policy, obtain the cash surrender value, etc. Thus, the Government concludes that the decedent made a transfer of rights in the same way that a purchaser of real property in the daughters' names would transfer the property to them rather than the consideration paid for it. And, the property would be included in the decedent's estate to the extent of its value at the time of his death.
 
 
 13
 We cannot agree that any bundle of rights was transferred. As already pointed out, the right to collect the proceeds of the policies had existed from the inception of the policies. The daughters could have paid the premiums themselves; they were under no duty to allow someone else to pay them. Hence, both as a matter of fact and as a matter of law, Mr. Mathers' payments constituted donations to the daughters, includible at their dollar value.
 
 
 14
 The actual essence of the Government's position is that it wishes to place a decedent who pays the premiums on a policy owned by another on the same footing with one who physically transfers the policy itself. It is said that the daughters received insurance benefits and not cash and that the payment of each and every premium helped to produce the proceeds. The answer to this, however, may be found in Gorman, supra, as well as the decision of the Tax Court in the Estate of Inez Coleman, 52 T.C. 921 (1969). We agree with the Tax Court that the rights maintained belonged to the owners, not to the decedent, and were thus neither transferred nor transferrable by the decedent.
 
 
 15
 Finally, Revenue Ruling 67-463, 1967, 2 Cum.Bull. 327,[3] asserting taxability of the insurance proceeds in circumstances identical to this case is without support. The cases cited in the ruling do not support the conclusion reached. Chase National Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929), involved whether the federal estate tax imposed on insurance policies owned by the decedent was a direct tax on property. Liebmann v. Hassett, 1 Cir., 1945, 148 F.2d 247, also cited with the ruling, a case which arose under § 302(g) of the Revenue Act of 1926 should be discounted since the premium payment test on which it rested has been rejected. Scott v. Commissioner of Internal Revenue, 9 Cir., 1967, 374 F.2d 154, is irrelevant in that the underlying issue was the ownership of an insurance policy under California law which depended upon payment of premiums as between the spouses.
 
 
 16
 The parties have extensively briefed Section 2042 of the Internal Revenue Code [26 U.S.C.A. § 2042] and its legislative history. We are of the view that this section does not relate directly to whether the proceeds of a policy are includible in the gross estate under Section 2035. We note, however, our agreement with the holding in Gorman, supra, as to both the legislative history and the effect of this section as it now appears in the 1954 Code.
 
 
 17
 We explicitly decide the case under the terms of Section 2035 and hold that no part of the proceeds of the Mathers policies were includible in the gross estate of the decedent.
 
 
 18
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 Section 2035 — Transactions in contemplation of death
 (a) General rule —
 The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.
 (b) Application of general rule —
 If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.
 
 
 [2]
 82 Harvard Law Review 1765; 67 Michigan Law Review 812 (1969); 64 Northwestern University Law Review 116 (1969); 43 Tulane Law Review 882 (1969). See, also 57 A.B.A. Journal 475 (1967)
 
 
 [3]
 [Conclusion]
 In view of the foregoing, it is concluded that where a decedent, within three years of the date of death and in contemplation of death, made premium payments on a policy of insurance on his life, the incidents of ownership in which were transferred more than three years prior to his death, such payment was a transfer of an interest in the policy measured by the proportion the amount of premiums so paid bears to the total amount of premiums paid. Accordingly, the value of that proportion of the amount receivable as insurance that the premiums paid within three years of death bear to the total premiums paid is includible in the decedent-insured's gross estate under the provisions of section 2035 of the Code.