**Mrs. Ann H. BINTLIFF, Individually and as Executrix of the Estate of Charles Victor Bintliff, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1279.**

United States District Court, E. D. Texas, Texarkana Division.

July 7, 1971.

W. H. Arnold, Jr., Arnold & Arnold, Texarkana, Ark., for plaintiff.

Roby Hadden, U. S. Atty., Tyler, Tex., Johnnie M. Walters, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Washington, D. C., Jerry A. Wells, Michael D. Cropper, Dept. of Justice, Dallas, Tex., for defendant.

MEMORANDUM OPINION AND ORDER

JOE J. FISHER, Chief Judge.

This is an action brought by Ann H. Bintliff, widow of the decedent Doctor Charles Victor Bintliff, as executrix of his estate, against the United States of America, for the refund of an alleged overpayment of Federal estate taxes in the amount of $2,803.17 plus interest. The matter is before the Court on the Motions of both Plaintiff and Defendant for Summary Judgment, and the parties have stipulated to the following facts.

Doctor Bintliff, a resident of the state of Texas, died September 12, 1963, from injuries sustained in the accidental crash of an aircraft which he was piloting. At this time, Doctor Bintliff had several

insurance policies, two of which are the subject of this suit. One of these was a life insurance policy with Commercial National Insurance Company, issued August 26, 1955, naming Charles V. Bintliff as the insured and his wife Ann H. Bintliff as the beneficiary. This policy, including the special control clause [1] headed "Beneficiary as Sole Owner," was reinsured and assumed by the North American Company for Life, Accident and Health Insurance (hereinafter referred to as North American Company) by certificate effective February 1, 1963. The premium of $225.20 was paid annually by Ann Bintliff from her personal architecture business account until the time of her entry into the partnership of Bintliff and Bell, Architects. Beginning in 1955, the partnership paid the premium until July 1, 1960, after which time the premium was paid from the business bank account of Doctor Bintliff. At the time of Doctor Bintliff's death, the premium due August 26, 1963, had not been paid, and the policy was then in the grace period. Upon his death, North American Company paid to Ann Bintliff the $20,000 face amount of its policy.

Two other insurance policies, in the form of decreasing term life insurance, were obtained by Doctor and Mrs. Bintliff from Franklin Life Insurance Company on April 30, 1957, and July 23, 1958, respectively. The Bintliff and Bell partnership paid the annual premiums of $147.25 and $156.03, respectively, on these policies until July 1, 1960, after which time the premiums were paid from the business bank account of Doctor Bintliff. On July 19, 1961, the parties requested that these policies be exchanged for a substitute policy for $25,-000 under an ordinary life plan and cited ownership in the name of Ann Bintliff. This request was granted, and a new policy containing a control clause [2] entitled "Control of Policy by Owner" was issued July 23, 1961. The $71.00 premium on this policy was paid monthly from the business bank account of Doctor Bintliff.

On June 6, 1963, Doctor and Mrs. Bintliff assigned the Franklin Life Insurance policy to the State National Bank of Texarkana, Arkansas (hereinafter referred to as the bank), pledging the policy as collateral security for loans by the bank.[3] After the death of Doctor

1. This clause read as follows:
   "It is expressly and irrevocably made a condition precedent to the issuance of any policy of insurance pursuant hereto, and the material consideration therefor, that none of the incidents of ownership, whether reversionary or otherwise, in any such policy shall ever be possessed by or vested in the insured thereunder, but that, on the contrary, any such policy shall constitute the sole and absolue property of the beneficiary, who shall have full, complete and vested rights therein, and the insured shall never have the right to change such beneficiary or any other condition or provision affecting or relating to such insurance. The condition is made a part of Application No. 171 to Commercial National Insurance Company dated December 29, 1954 for $20,000 life insurance, and if any provision in such application is in conflict herewith, this condition shall control."

2. This clause read as follows:
   "The provision of this Policy entitled 'Control' is hereby replaced by the fol-

lowing provision for 'Control'; Ann H. Bintliff hereinafter designated as Owner shall, subject to the rights of any assignee of record with the Company, and insofar as the laws of the state governing this Policy allow, have the right to assign or surrender this Policy and exercise, receive, and enjoy every other right, benefit, or privilege contained in this Policy, or agree with the Company to any change in or amendment to this Policy without the consent or joinder of the Insured or of any Beneficiary. The Insured shall not have the right to exercise, receive, and enjoy said rights, benefits, and privileges."

3. The assignment clause contained the following paragraph:
   "This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the

Bintliff, Franklin Life Insurance Company issued a check jointly to Ann Bintliff and the bank for the $25,000 face amount of its policy. Of this amount, the sum of $1,529.60 was paid to the bank in payment of one note for $100 and another note for $1400, and interest of $29.60.

Upon audit, the Internal Revenue Service assessed estate taxes on one-half of the proceeds of the life insurance policies received by the doctor's wife on the basis that all the premiums on both the Commercial National policy and the Franklin Life policy had been paid with community funds and that the purported assignments by the doctor were not effective to make the policies the separate property of his wife. The Government contends that Ann Bintliff held title to the insurance policies as agent for the community estate and that Doctor Bintliff possessed a community interest in the policy which constituted sufficient "incidents of ownership," as contemplated by Section 2042(2) of the Internal Revenue Code of 1954,[4] to require inclusion of one-half of the proceeds in his estate upon his death. The taxpayer argues that the assignment clauses placing ownership in Ann Bintliff clearly reflect the intention of Doctor Bintliff to make a gift of his community interest to his wife, and therefore none of the proceeds was includible in his estate upon his death.

The Government's theory that there was not an effective assignment is primarily based on Freedman v. United States, 382 F.2d 742 (5th Cir. 1967). In *Freedman*, a wife, using community funds, purchased insurance on her life with her husband named as beneficiary and express "owner" of the policy. Up-

on the wife's death, her husband attempted to exclude all the proceeds from her estate. The Court held that even though the husband had signed the policy as "owner," the decedent wife had not performed an affirmative act which would clearly reflect an intention to make a gift of her community interest and therefore one-half of the proceeds were includible in the wife's estate.

A similar issue was before this Court in Parson v. United States, 308 F.Supp. 1159 (1970). In *Parson*, we distinguished *Freedman* on the basis that Doctor Parson had assigned to his wife all right and title to the insurance policy through the use of a special control clause [5] similar to the clauses in the instant case. Holding that Doctor Parson had performed the "affirmative act" contemplated by the Court in *Freedman* when he executed the assignment to his wife which irrevocably transferred every incident of ownership to her, we concluded that the assignment was sufficient to effectuate a gift of his community interest and that none of the proceeds of the policy was includible in his estate.

■ Therefore, we now hold that the assignments by Doctor Bintliff were effective to make the insurance policies the separate property of his wife, and none of the proceeds was includible in his gross estate.

As separate and distinct grounds for taxing one-half of the proceeds of the Franklin Life policy received by Ann Bintliff, the Internal Revenue alleges that the doctor possessed incidents of ownership in this policy at the time of his death within the meaning of Section 2042(2) of the Internal Revenue Code by virtue of the fact that the policy had

---

undersigned and the Assignee (all of which liabilities secured or to become secured are herein called 'liabilities')."

4. Section 2042(2) requires that a decedent include in his gross estate proceeds of life insurance policies on which the decedent exercised either alone or in conjunction with any other person the incidents of ownership.

5. In *Parson*, this clause read as follows: "Third Party Ownership—It is agreed by the person to be insured that all right and title to the insurance applied for shall vest in and every incident of ownership thereof may be exercised and enjoyed irrevocably without the consent of any other person by: Mrs. Beatrice Smither Parson, whose insurable interest is wife."

been pledged as security for a marital community obligation. The Government contends that decedent utilized a policy in which he had allegedly no right, title or interest and that the potential and economic benefit derived from such usage is clearly an incident of ownership in the insurance policy.

The Government relies on the Fifth Circuit decision in Prichard v. United States, 397 F.2d 60 (1968) for this theory. In *Prichard*, the decedent named his wife as beneficiary and sole owner of an insurance policy, having the "power to exercise all the privileges, benefits, rights and options granted to the insured in the policy." The Court held that, notwithstanding the formal ownership by his wife, decedent possessed incidents of ownership in the policy under Section 2042(2) of the Internal Revenue Code, and one-half of the policy proceeds were includible in his estate.

We are able to distinguish *Prichard* from our case. The decedent in *Prichard*, as a prerequisite to obtaining a loan from the insurance company, was required to secure an insurance policy and assign it to the company as additional collateral. The insurance policy and the loan were indispensable parts of an integrated transaction. In the total transaction, decedent possessed incidents of ownership at all times, "an unconsummated arrangement for eight months followed by the continuing economic benefit of the completed assignment." [6]

■ Moreover, the Fifth Circuit specifically indicated in *Prichard* that it had not been called upon to decide the question with which we are now faced. In our case, we have already determined that decedent's wife was the absolute owner of the Franklin Life policy on her husband's life, her husband no longer

having any incidents of ownership therein. The policy was then assigned as collateral for a community debt. It is our opinion that the assignment alone does not bring the policy within the husband's estate. We therefore find that none of the proceeds of the Franklin Life policy was includible in decedent's gross estate.

The Government alternatively contends that if the Court should determine that the proceeds of neither, or only one, of the policies were includible in decedent's gross estate by virtue of Section 2042, then one-half of the premiums paid on the non-included policy within three years of the decedent's death would be includible in decedent's estate as a transfer in contemplation of death under Section 2035 of the Internal Revenue Code.[7]

■ That one-half of the premiums must be included in the decedent's gross estate in circumstances such as the instant case is a point that has recently been clarified by both the Tax Court and United States District Courts in Michigan, Louisiana, and Texas.[8] Each of these courts has held without reservation that premiums paid by the insured on life insurance policies in which the incidents of ownership are in third persons, may appropriately be included as transfers in contemplation of death pursuant to Section 2035 in the absence of the estate establishing transfer motives other than those in contemplation of death.

In our case, we are of the opinion that Plaintiff has not properly established by affidavit or otherwise that the premiums were not transferred in contemplation of death. We therefore find that one-half of the premiums paid on both the Commercial National policy and the Franklin Life policy within three years prior to decedent's death should be included in his gross estate.

6. *Prichard*, at 64.

7. Section 2035 requires that the decedent's estate include property transferred in contemplation of death. Further, property transferred by a decedent within three years of death is presumed, unless shown to the contrary, to be made in contemplation of death.

8. Estate of Coleman v. Commissioner, 52 T.C. 921 (1969); Gorman v. United States, 288 F.Supp. 225 (E.D.Mich., 1968); First Nat. Bank of Midland, Tex. v. United States, 69–1 U.S.T.C., par. 12, 574 (W.D.Tex., Dec. 11, 1968), rev'd on other issues, 423 F.2d 1286 (5th Cir. 1970); Bel v. United States, 310 F.Supp. 1189 (W.D.La., 1970).

**1360**

For the reasons set out hereinabove, it is ordered, adjudged and decreed that Plaintiff's Motion for Summary Judgment should be, and the same is hereby granted, insofar as it relates to the Court's finding that one-half of the proceeds of the Commercial National policy and the Franklin Life policy were not includible in decedent's gross estate.

It is further ordered, adjudged and decreed that Defendant's Motion for Summary Judgment should be, and the same is hereby granted, insofar as it relates to the inclusion in decedent's gross estate of one-half of the premiums paid on the Commercial National policy and the Franklin Life policy within three years of decedent's death.

Final judgment shall be entered in accordance herewith.

