462 F.2d 403
 72-2 USTC P 12,858
 Mrs. Ann H. BINTLIFF, Individually and as Executrix of the
Estate of Charles Victor Bintliff,
Plaintiff-Appellee-Cross-Appellant,
v.
UNITED STATES of America, Defendant-Appellant-Cross-Appellee.
 No. 71-3273 Summary Calendar.*
 United States Court of Appeals,
 Fifth Circuit.
 June 21, 1972.
 
 Roby Hadden, U. S. Atty., Tyler, Tex., Ben A. Douglas, Atty. Tax Div., Dept. of Justice, Dallas, Tex., Fred B. Ugast, Acting Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Washington, D. C., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Loring W. Post, David English Carmack, Attys. Tax Div., Dept. of Justice, Washington, D. C., for appellant.
 Deene Goodlaw Solomon, Arnold & Arnold, Texarkana, Ark., for appellee; W. H. Arnold, III, Thomas S. Arnold, Richard L. Arnold, Texarkana, Ark., of counsel.
 W. H. Arnold, Jr., amicus curiae.
 Before JOHN R. BROWN, Chief Judge and GOLDBERG and MORGAN, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 There are three points raised in this appeal, two of which are ruled by precedents that the trial court accurately appraised. We are compelled to reverse on the third point, even though the trial judge had no opportunity to confront it. He is not blessed, as none of us would be, with the clairvoyance to foresee that the Government would rely on a proposition of law in the appellate court for the first time.
 
 
 2
 The Commissioner included in the gross estate of decedent, Dr. Charles V. Bintliff, the value of one-half of the proceeds of two life insurance policies received by decedent's wife after his death in an airplane crash in 1963. The Commissioner reasoned that the premiums of both policies had been paid with community funds and that the purported assignments in the policies from decedent to his wife were not effective to make the policies the separate property of Mrs. Bintliff. The first of the policies in question, issued in 1955 in a face amount of $20,000, contained a control clause signed by the decedent and his wife which read as follows:
 
 
 3
 "It is expressly and irrevocably made a condition precedent to the issuance of any policy of insurance pursuant hereto, and the material consideration therefor, that none of the incidents of ownership, whether reversionary or otherwise, in any such policy shall ever be possessed by or vested in the insured thereunder, but that, on the contrary, any such policy shall constitute the sole and absolute property of the beneficiary, who shall have full, complete and vested rights therein, and the insured shall never have the right to change such beneficiary or any other condition or provision affecting or relating to such insurance. This condition is made a part of Application No. 171 to Commercial National Insurance Company dated December 29, 1954 for $20,000.00 life insurance and if any provision in such application is in conflict herewith, this condition shall control."
 
 
 4
 The second of the policies in contention here was issued in 1961 pursuant to conversion provisions in two term life insurance policies previously issued to decedent in 1957 and 1958. Each of the term policies and the converted policy contained a control provision very similar to that contained in the 1955 policy:
 
 
 5
 "The provision of this Policy entitled 'Control' is hereby replaced by the following provision for 'Control':
 
 Ann H. Bintliff
 
 6
 hereinafter designated as Owner shall, subject to the rights of any Assignee of record with the Company, and insofar as the laws of the state governing this Policy allow, have the right to assign or surrender this Policy and exercise, receive, and enjoy every other right, benefit, or privilege contained in this Policy, or agree with the Company to any change in or amendment to this Policy without the consent or joinder of the Insured or of any Beneficiary. The Insured shall not have the right to exercise, receive, and enjoy said rights, benefits, and privileges."
 
 
 7
 Decedent's wife, who had an independent income as an architect, paid the premiums on each policy until July 1, 1960, at which time the premiums were paid from the business bank account of the decedent.[1] In June of 1963, approximately three months before Dr. Bintliff's death, Dr. Bintliff and his wife assigned the second converted policy as collateral security for a bank loan.
 
 
 8
 After Dr. Bintliff's death the insurance companies paid the proceeds to Mrs. Bintliff, and the Commissioner included one-half the value of all of the proceeds in defendant's gross estate for estate tax purposes on the ground that because premiums on both policies had been paid with community funds the decedent held sufficient incidents of ownership to come within the taxable grasp of 26 U.S.C.A. Sec. 2042(2).[2] Taxpayer sued in federal district court for a refund. On cross-motions for summary judgment the district judge held: (1) that one-half of the proceeds were not includable in the decedent's estate on the Government's theory of community property; but (2) that one-half of the premiums paid on both policies from 1960 to 1963 were includable in the decedent's gross estate as premiums paid in contemplation of death, 26 U.S.C.A. Sec. 2035.[3] On appeal, the Government asserts for the first time that the assignment of the second policy as collateral for a bank loan requires that one-half of the proceeds from that one policy be includable in the decedent's gross estate under 26 U.S.C.A. Sec. 2042(1).[4] The excellent opinion of the district judge with regard to the contentions raised below needs little elaboration and we affirm his conclusions. See Bintliff v. United States, E.D.Tex.1971, 329 F.Supp. 1356. However, we are compelled to reverse on the basis of the Government's newlyraised but properly justiciable theory.
 
 
 9
 *****
 
 
 10
 * * *
 
 
 11
 The includability of life insurance proceeds in a community property situation is the subject of continuing litigation before this court. However, the precise point raised in this appeal by the Government has been settled in favor of the taxpayer by a very recent decision of this court, Parson v. United States, 5 Cir. 1972, 460 F.2d 228 [May 22, 1972]. We see little to add to the approach of Judge Ingraham in Parson. In the instant case, as in Parson, Dr. Bintliff
 
 
 12
 ". . . was forced to make a conscious decision between irrevocably assigning all rights, title and every incident of ownership to Mrs. [Bintliff], or expressly retaining ownership and naming a beneficiary. He chose the former and Mrs. [Bintliff] received the proceeds as third party owner."
 
 
 13
 Parson v. United States, 460 F.2d at 231. We conclude, as did the able district judge, that the "control clauses" executed by the decedent were effective as assignments or gifts of his community interest in the property.[5]
 
 
 14
 The includability of the premiums paid from 1960 to 1963 on the theory that they were made in contemplation of death has also been settled by precedent from this court. While the Government is incorrect in implying that life insurance is somehow always inherently purchased in contemplation of death within the intent of the Code provision, see Bel v. United States, 5 Cir. 1971, 452 F.2d 683, cert. denied, 406 U. S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118, it is correct in asserting that there is a presumption that all property transferred within three years of death for less than adequate and full consideration is transferred in contemplation of death and, therefore, includable in a decedent's gross estate. The burden is on the taxpayer to show that the dominant motive for the gift was life-related, and the district judge was not incorrect in his conclusion that the taxpayer ". . . has not properly established by affidavit or otherwise that the premiums were not transferred in contemplation of death." Bintliff v. United States, 329 F.Supp. at 1359. Harsh as it may seem to Mrs. Bintliff, it is simply not enough for her to show that her husband was relatively young (49 years of age) and in good health. See Bel v. United States, supra. There must be additional evidence of a life-related motive in the giving of the gift itself in order to overcome the presumption of the statute. It is settled law in this court that the premiums paid in contemplation of death, not the whole of the life insurance proceeds, are includable in the decedent's gross estate under Section 2035. See First National Bank of Midland v. United States, 5 Cir. 1970, 423 F.2d 1286. But see Bel v. United States, supra. Therefore the district judge's conclusion that one-half of the premiums paid by the decedent from 1960 to 1963 are includable in the decedent's gross estate would be correct, were it not for the third and decisive contention raised in this appeal.
 
 
 15
 The contention that requires reversal was raised for the first time on appeal. We sympathize with Mrs. Bintliff's complaint that the Commissioner's new theory smacks of unsportsmanlike conduct, and we regret that we do not have the benefit of the expertise of the learned district judge on the subject. However, litigation is not a game, but a proof and decision-making process. If we were guided by the Marquis of Queensberry rules, Mrs. Bintliff could justifiably cry "foul" at our post-mortem examination of the applicable law to the undisputed facts. Nevertheless, the question raised by 26 U.S.C.A. Sec. 2042(1), supra note 4, is a part of this case, and the interests of justice require that we consider it. See F.R.Civ.Pro. 1:
 
 
 16
 "[W]here, as here, the case below was tried, not upon any misapprehension of the facts, but upon a misapprehension of the effect of those facts in law, appellant may not be prevented from pressing here for the application, to the proven facts, of the correct principles of law."
 
 
 17
 Associated Indemnity Corp. v. Scott, 5 Cir.1939, 103 F.2d 203, 209. See also Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir. 1958, 259 F.2d 231, cert. denied, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575; accord Smith Engineering Co. v. Rice, 9 Cir.1938, 102 F.2d 492, cert. denied, 307 U.S. 37, 59 S.Ct. 1034, 83 L.Ed. 1519.
 
 
 18
 Mrs. Bintliff, jointly with her husband, pledged her second insurance policy to secure two bank notes, one for $100 and another for $1,400. A clause in the assignment contract provided that the assignment to the bank for the community loan was to apply to all liabilities of both parties to the bank. After decedent's death the insurance company issued a check jointly to Mrs. Bintliff and to the bank for the face amount of the policy, $25,000. Of this sum the bank received $1,529.60, the total of the two notes executed by the deceased and his wife in favor of the bank, plus interest. In the estate's tax return, one-half of the debt was deducted from the decedent's gross estate as part of a community debt.
 
 
 19
 The fact that Dr. Bintliff cosigned the assignment of his wife's insurance policy to the bank as security for the community loan does not operate as a matter of law to attach an incident of ownership in the policy to Dr. Bintliff, thereby making the policy taxable to his estate under Section 2042(2). We need not engage the intricacies or labyrinths of the pre-1970 emancipative rights of a Texas wife in the disposition of her separate property. We are relieved of this burden because the 1957 and 1958 vesting of the ownership of the second insurance policy in Mrs. Bintliff was not divested by the joint signatures on a note and the contemporary assignment of the insurance policy as security in 1963. Lending institutions, out of an abundance of caution endemic to their fiscal lives, require many superfluous signatures on documents. These title superfluities are not title divesting.[6] Therefore, we conclude here that one-half of the community debt which was secured and repaid by proceeds from the insurance policy is includable in the decedent's gross estate under Section 2042(1), supra note 4, and its attendant regulations:
 
 
 20
 "[I]f under the terms of an insurance policy the proceeds are receivable by another beneficiary but are subject to an obligation, legally binding upon the other beneficiary, to pay taxes, debts, or other charges enforceable against the estate, then the amount of such proceeds required for the payment in full (to the extent of the beneficiary's obligation) of such taxes, debts, or other charges is includable in the gross estate. Similarly, if the decedent purchased an insurance policy in favor of another person or a corporation as collateral security for a loan or other accommodation, its proceeds are considered to be receivable for the benefit of the estate. The amount of the loan outstanding at the date of the decedent's death, with interest accrued to that date, will be deductible in determining the taxable estate."
 
 
 21
 26 C.F.R. Sec. 20.2042-1(b) (1) [emphasis added]. Thus, even though the named beneficiary in Dr. Bintliff's policy was his wife and not his estate, it is clear that the assignment of the policy as collateral for a debt "legally binding upon the other beneficiary" and "enforceable against the estate" and the creditor's use of the insurance proceeds to satisfy that debt against the estate render the proceeds constructively receivable by the estate and, therefore, taxable to that extent. See Estate of Matthews v. Commissioner, 3 T.C. 525 (1944). See also Annot., 14 L.Ed.2d 817, 846 (1965). It is the estate that has benefited from the use of the proceeds to satisfy a community debt, and, for that reason, this case is reversed in part and affirmed in part.
 
 
 22
 Affirmed in part and reversed in part.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I
 
 
 [1]
 From 1955 to 1960 the premiums were paid by the architecture partnership in which Mrs. Bintliff was a partner
 
 
 [2]
 The value of the gross estate shall include the value of all property-
 (2) Receivable by other beneficiaries. -To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For purposes of the preceding sentence, the term "incident of ownership" includes a reversionary interest (whether arising by the express terms of the policy or other instrument or by operation of law) only if the value of such reversionary interest exceeded 5 percent of the value of the policy immediately before the death of the decedent. As used in this paragraph, the term "reversionary interest" includes a possibility that the policy, or the proceeds of the policy, may return to the decedent or his estate, or may be subject to a power of disposition by him. The value of a reversionary interest at any time shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Secretary or his delegate. In determining the value of a possibility that the policy or proceeds thereof may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such policy or proceeds may return to the decedent or his estate.
 26 U.S.C.A. Sec. 2042(2).
 
 
 [3]
 (a) General rule.-The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death
 (b) Application of general rule.-If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.
 26 U.S.C.A. Sec. 2035.
 
 
 [4]
 The value of the gross estate shall include the value of all property-
 (1) Receivable by the executor.-To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.
 26 U.S.C.A. Sec. 2042(1).
 
 
 [5]
 Compare Freedman v. United States, 5 Cir. 1967, 382 F.2d 742, where ". . . the decedent did not perform an affirmative act which would clearly reflect an intention to make a gift of her community share." Freedman v. United States, 382 F.2d at 747
 
 
 [6]
 Compare Prichard v. United States, 5 Cir. 1968, 397 F.2d 60, where there was no Parson-type divestiture and where ownership of the insurance policy was ambivalent. In Prichard the decedent was required to secure an insurance policy and assign it to the insurance company as collateral for obtaining a loan from the company itself. Although the policy in Prichard did contain a clause purporting to grant ownership to decedent's wife, the entire transaction in Prichard, unlike that in the instant case, was a unified whole in which the decedent never parted with any incidents of ownership. The policy provision in Prichard was a non-substantive formality. Thus, we are called upon here to decide a question very similar to that which we pretermitted in Prichard: whether or not one-half of any proceeds used to satisfy a community debt to which an insurance policy had been pledged by a wife who was allegedly the sole owner of the policy would be includable in the decedent's gross estate under Section 2042(1)