ESTATE OF WILLIAM P. GLADE by MARY HATCHER GLADE, Co-Executrix and WILLIAM P. GLADE, JR., Co-Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Glade v. Commissioner
Docket No. 8957-76.
United States Tax Court
T.C. Memo 1978-316; 1978 Tax Ct. Memo LEXIS 200; 37 T.C.M. (CCH) 1318; T.C.M. (RIA) 78316; August 14, 1978, Filed *200 Life insurance policies for which decedent applied were issued to his son and daughter as owners and beneficiaries. Decedent, domiciled in a community property State, provided the funds for payment of the policy premiums. The son and daughter assigned the policies as security for a loan to decedent's business. At decedent's death, a portion of the proceeds of the daughter's policy was paid to the creditor to satisfy the balance of decedent's loan. 1. Held: decedent did not possess at his death any incidents of ownership in the policies, and so decedent's gross estate does not include half of the policy proceeds under section 2042(2). 2. Held further: half of the premiums paid by decedent on the policies during the three-year period ending with his death are includable in his gross estate under section 2035, as transfers in contemplation of death. David O. Smith, for the petitioner. Robert M. Smith and William P. Hardeman, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge: * Respondent determined a deficiency of $ 16,673.06 in estate tax for the Estate of William P. Glade. The only issue presented for our consideration is whether there should be included in decedent's *201 gross estate under section 2042[1] some part of the proceeds of two insurance policies on decedent's life, or, in the alternative, whether there should be included in decedent's gross estate under section 2035 some part of the amounts paid by decedent with respect to premiums on these policies during the three-year period immediately preceding his death. [2] All of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. Decedent, William P. Glade, died on July 11, 1972, leaving as his widow, Billie Hatcher Glade (hereinafter sometimes referred to as "Billie"). *202 Decedent was domiciled in Texas at his death. Decedent's daughter, Mary Hatcher Glade, and son, William P. Glade, Jr. (hereinafter sometimes referred to as "Mary" and "William", respectively), are co-executors of decedent's estate. Decedent was a contractor doing business in the Fort Worth, Tex., area as Glade Construction Company. Before May 27, 1964, decedent had a fully extended $ 180,000 line of credit at the Fort Worth National Bank. The chairman of the board of the Bank of Commerce, a personal friend of decedent, persuaded decedent to move this line of credit from the Fort Worth National Bank to the Bank of Commerce. On May 27, 1964, decedent (doing business as Glade Construction Company) executed nine promissory notes, each in the face amount of $ 20,000 and payable to the Bank of Commerce or order. On the same day, decedent (doing business as Glade Construction Company) executed a chattel mortgage on machinery and equipment naming the Bank of Commerce as mortgagee, and a deed of trust on certain real property; both the mortgage and the deed secured the nine promissory notes. Also on the same day, decedent, Billie, Mary, and William pledged their stock in Glade, Inc., *203 to the Bank of Commerce as security for the nine promissory notes. The $ 180,000 debt to the Bank of Commerce was a community debt. Decedent used the $ 180,000 proceeds of the notes to satisfy the credit extended by the Fort Worth National Bank. Decedent obtained the $ 180,000 loan from the Bank of Commerce and used the proceeds of the loan to pay the debt owed to the Fort Worth National Bank, as a personal favor to the chairman of the board of the Bank of Commerce. On May 13, 1964, decedent, then 72 years old, applied to the Southwestern Life Insurance Company (hereinafter sometimes referred to as "Southwestern") for a $ 100,000 life insurance policy ("executive special whole life"). Decedent named William and Mary as equal owners and beneficiaries of the policy. On or before May 27, 1964, decedent applied to Southwestern for two $ 50,000 life insurance policies ("10 pay life"), naming Mary as owner and beneficiary of one and William as owner and beneficiary of the other. These applications superseded the May 13 application. On May 27, Mary and William executed assignments to the Bank of Commerce of these $ 50,000 insurance policies. These $ 50,000 policies were issued by *204 Southwestern on or after June 6, 1964. One of these issued policies named Mary as owner and beneficiary and the other named William as owner and beneficiary. On July 7, 1964, the Bank of Commerce issued to decedent a collateral receipt for these two life insurance policies. During each month of his life after May 27, 1964, decedent deposited an amount equal to the monthly premium on one policy into an account at the Bank of Commerce belonging to Mary and the same amount with respect to the other policy into an account at the Bank of Commerce belonging to William. The monthly premiums on each of the two policies were paid from these accounts by Mary and William, respectively. As of the date of decedent's death, the balance on decedent's $ 180,000 loan from the Bank of Commerce was $ 42,000. Southwestern paid to the Bank of Commerce $ 42,000 of the proceeds of the policy issued in the name of Mary as owner, and paid $ 8,000 of the proceeds to Mary. Southwestern paid to William the $ 50,000 proceeds of the policy issued in his name as owner. The books of decedent's estate reflect that $ 42,000 is owed by the estate to Mary. Decedent's estate tax return did not include in the value *205 of decedent's gross estate any amounts with respect to these two life insurance policies. Respondent takes several positions, in the alternative, on the issue remaining in this case. As his primary position, respondent maintains that half [3] of the $ 100,000 proceeds of the life insurance policies (i.e., $ 50,000) is includable in the value of decedent's gross estate under section 2042(2) because decedent possessed at his death the necessary incidents of ownership. Petitioner maintains that decedent did not have the necessary incidents of ownership. On this point, we hold for petitioner. In the alternative, respondent maintains that half (see n. 3, supra) of the $ 46,799.32 premiums paid in the three years before decedent's death (i.e., $ 23,349.66) is includable in the value of decedent's gross estate under section 2035 as gifts made in contemplation of death. Petitioner maintains that decedent's payments were prompted by life motives. On this alternative, we hold for respondent. [4] *206 A. Section 2042(2)--incidents of ownership in life insurance policies
Section 2042(2)[5] *207 requires inclusion in the value of the gross estate of the value of amounts receivable by anyone under any insurance policy on the life of the decedent if "the decedent possessed at his death any of the incidents of ownership" in the policy. Under the statute, the test is whether "the decedent possessed at his death any of the incidents of ownership," (emphasis supplied) and not whether such incidents were possessed at any earlier time, such as when the policy was applied for. Bintliff v. United States,462 F.2d 403 (CA5 1972); Parson v. United States,460 F.2d 228 (CA5 1972). [6] See Commissioner v. Noel's Estate,380 U.S. 678, 684 (1965); Prichard v. United States,397 F.2d 60, 64 (CA5 1968). The statute does not define the term "incidents of ownership" and no all-inclusive list has gained acceptance. [7] *209 From the stipulated record in this case we conclude that decedent possessed at his death no "incidents of ownership" in the two $ 50,000 life insurance policies described above. He had no right to control the benefits under the *208 policies; he had no right to use the policies for his economic benefit or the economic benefit of anyone else; and he did not even have the minor or formal rights that sometimes have been held to be sufficient to trigger inclusion under section 2042(2). Nor did decedent have any right to prevent anyone else from exercising any such right.See Bintliff v. United States,supra;Parson v. United States,supra.Cf. Schwager v. Commissioner,64 T.C. 781 (1975). Respondent bases his incidents of ownership argument on Prichard v. United States,supra. In Prichard, a Mr. Smith applied to a life insurance company for a mortgage loan on a shopping center that he planned to build. The insurance company stated as one of its conditions for making the loan to Smith that he secure $ 250,000 of insurance on his life from the company, to be assigned as additional collateral. At the direction of the insurance company, the company was not made beneficiary and owner of the policy, but the policy was absolutely assigned to the company. Smith's wife was named beneficiary and owner of the policy. The loan was then made to Smith and his wife, a husband-wife community. As in the instant case, the Internal Revenue Service *210 sought to include half of the policy proceeds [8] in Smith's gross estate under section 2042(2). The court held for the Internal Revenue Service, on the basis that the insurance policy and the loan were indispensable parts of an integrated transaction. The conclusion in Prichard is based upon the combination of circumstances present in that case; it does not appear that a single element is sufficient to require the same conclusion in the case before us. E.g., Parson v. United States,supra;Bintliff v. United States,supra. We conclude that the differences between the factual situation in Prichard and the factual situation in the instant case are sufficient so that the Prichard result is not required in the instant case. In Prichard, the loan was made to the husband-wife community and the policy was owned by the wife--the other half of the community; here, the loan was made to decedent and the loan was a community debt, but the policies were owned by decedent's children. In Prichard, Smith approached the lender and the funds were needed for permanent financing of a shopping center Smith proposed *211 to construct; here, the lender approached decedent, who agreed to the transaction as a personal favor to the chairman of the board of the lender, and the loan proceeds were used to retire the debt on a line of credit from another bank. In Prichard, the insurer was also the lender, the loan was conditioned on the assignment of the policy, and the loan was not made (or even formally committed) until the policy was issued; here, the insurer was a separate entity independent of the lender, it is not clear that the lender actually required the assignment before agreeing to make the loan (see Bintliff,462 F.2d at 407; Lamade v. Brownell,245 F.Supp. 691, 695-696 (M.D. Pa. 1965)), and the loan was made before the policies were issued.[9] *212 Under these circumstances, we conclude that Prichard does not require a decision for respondent in the instant case and that decedent did not possess at his death any of the incidents of ownership. We hold that section 2042(2) does not require inclusion of the value of any part of the life insurance policy proceeds in the value of decedent's gross estate. B. Section 2035--transfers in contemplation of death
Since we have held for petitioner on respondent's primary position, we proceed to consideration of respondent's first alternative. Section 2035[10] *213 *214 requires inclusion in the value of the gross estate of the value of all property which the decedent transferred in contemplation of death. Transfers made during the three-year period ending with the date of decedent's death are deemed to have been made in contemplation of death, unless the contrary is shown. Respondent's determination to include in the estate half of the premium amounts (see n. 3, supra) deposited to the accounts of William and Mary at the Bank of Commerce during the three-year period preceding decedent's death, must be upheld unless petitioner shows that the dominant motive for the transfers was life-related. E.g., Bintliff v. United States,462 F.2d at 406; Rule 142(a), Tax Court Rules of Practice and Procedure.
At the start of the three-year period, in 1969, decedent was 77 years old. The transfers at issue herein are those made to his children to be used by them to pay premiums on life insurance policies on decedent's life. Decedent's children owned, and were the sole beneficiaries under, these policies. We conclude that the transfers at issue herein were made by decedent in contemplation of his death. Petitioner's position is that decedent had a dominant life-related motive for paying the insurance premiums. Petitioner states on brief that "It is reasonable to assume that the Bank *215 [of Commerce] would have demanded the balance due on all of the notes if the policy premiums were not paid" and that "If the Bank of Commerce had demanded the balance due, there was a chance that he [decedent] could lose his entire livelihood." Petitioner further states that "Obviously, Mr. Glade's dominant motivation in making deposits to his children's accounts was to keep the policies in force for the benefit of the Bank of Commerce, the protection of his credit and protection of his business * * *." At another point, petitioner states that "This insurance policy was of no great benefit to William P. Glade or his children." Further, petitioner states that "the pledge of the insurance policies to secure a loan from the Bank of Commerce was not an economic benefit to Mr. Glade * * *. The pledge of the policies was an economic benefit to Mr. Glade's son and daughter, the pledgors." Finally, petitioner states "that at the time of the note, Mr. Glade was 72 years old. There was a substantial chance that no insurance company would issue life insurance on his life. Had this been the case, the Bank of Commerce probably would have made the loan anyway because of the value of the other *216 collateral." Firstly, petitioner paints a picture of speculative dangers confronting decedent and then asserts that decedent and his children were not trying to benefit themselves when they acted to avert these dangers. It is apparent that petitioner's contradictory analyses of decedent's purposes stem from its efforts to combat both respondent's primary position (incidents of ownership--section 2042(2)) and respondent's first alternative position (contemplation of death--section 2035). This attempt to carry water on both shoulders has served only to confuse the issue and leads us to conclude that petitioner has failed to carry its burden of proof as to life motives. Secondly, if we must speculate we would conclude that decedent's children, to whom the amounts at issue were transferred, had an interest in seeing to it that premiums continued to be paid during the three-year period. At the start of the period, decedent was 77 years old. The life insurance premium levels, set when decedent was 72, might well be lower than premiums that would have been required on a policy issued when decedent was 77 (if, indeed, decedent still was insurable at 77). During the three-year period, *217 then, William and Mary would have had a good bargain on the insurance even if they had to pay the premiums from their own incomes. Without exhausting all the different elements that might be relevant to a decision on this issue--especially in view of the statutory presumption as to contemplation of death--we conclude that the transfers at issue herein were made by decedent in contemplation of his death. We hold that section 2035 requires inclusion of half of the value of the life insurance premium amounts in the value of decedent's gross estate. (See n. 4, supra.) Decision will be entered under Rule 155. Footnotes
*. By order dated April 4, 1978, the Chief Judge reassigned this case from Judge William A. Goffe to Judge Herbert L. Chabot↩ for disposition. 1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect at decedent's death. ↩
2. Another issue, determination of the amount of the marital deduction, is agreed to be solely computational in nature; its resolution depends on the resolution of the issue described in the text, supra↩. Two other issues presented in the deficiency notice have been settled by stipulation.
3. Since Texas, the State of decedent's domicile, is a community property State, only half of any amount described by section 2042 or 2035↩ is includable in decedent's gross estate.
4. Respondent maintains as his second alternative position that half of the $ 42,000 of the life insurance policy proceeds which were applied to pay a debt of the estate (i.e., $ 21,000) is includable in the value of decedent's gross estate under section 2042(1). Since we hold for respondent on his first alternative position, we need not consider this second alternative. In the deficiency notice, his trial memorandum, and his opening statement at trial, respondent maintained as an additional alternative that half of the $ 100,000 life insurance policy proceeds (i.e., $ 50,000) is includable in the value of decedent's gross estate under section 2036. This alternative appears to have been abandoned by respondent in his answering brief and so will not be considered in this opinion.↩
5. SEC. 2042. PROCEEDS OF LIFE INSURANCE. The value of the gross estate shall include the value of all property-- * * *
(2) Receivable by other beneficiaries.--To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *↩
6. Estate of McKee v. Commissioner,T.C. Memo. 1978-108↩.
7. For example, sec. 20.2042-1(c), Estate Tax Regs., provides in part as follows: (2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * *. (3) The term "incidents of ownership" also includes a reversionary interest * * *. (4) A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if * * *. (5) As an additional step in determining whether or not a decedent possessed any incidents of ownership in a policy or any part of a policy, regard must be given to the effect of the State or other applicable law upon the terms of the policy. Also see Prichard v. United States,397 F.2d at 62-63; Schwager v. Commissioner,64 T.C. 781, 790↩ (1975).
8. Smith, like decedent in the instant case, was a domiciliary of Texas.(See n. 3, supra↩.)
9. On brief, respondent seeks to support his argument about the unitary nature of the transactions and the essential role of the life insurance policies in decedent securing the $ 180,000 loan from the Bank of Commerce by stating that "The Bank must have been privy to this agreement, because it issued a collateral receipt for the policies to William P. Glade on May 27, 1964. (Stip., para. 11 and Exhibit 8-H)." (Emphasis in original.) However, the cited stipulation provides that the receipt in question "was executed by the Bank of Commerce, Fort Worth, Texas, on July 7, 1964" (emphasis supplied), and the exhibit also is dated July 7, 1964,↩ some time after the policies were issued.
10. Section 2035, as in effect at decedent's death, provided in relevant part as follows: SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule.--If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section * * *; but no such transfer * * * made before such 3-year period shall be treated as having been made in contemplation of death. These provisions were amended by section 2001(a)(5) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1848, generally to include in the value of the gross estate the value of property which the decedent transferred within 3 years before death, whether or not the property was transferred in contemplation of death. Under section 2001(d)(1) of the 1976 Act, this amendment applies to transfers made after December 31, 1976. As a result, this amendment does not apply to the instant case.