Mrs. Daisy Miller Boyd BEL and Richard E. Gerard, Co-Executors of Last Will of John Albert Bel, Deceased, and Mrs. Daisy Miller Boyd Bel, Ernest F. Bel, James B. Bel, and Jeanne Bell Ingraham

v.

The UNITED STATES of America.

No. 13474.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

March 16, 1970.

Liskow & Lewis, Lake Charles, La., for plaintiffs.

Donald E. Walter, U. S. Atty., Shreveport, La., Pete Winstead, Tax Division, U. S. Dept. of Justice, Fort Worth, Tex., for defendant.

EDWIN F. HUNTER, Jr., District Judge.

This case involves five separate items. There is no dispute as to any material fact.

John Bel died by accidental means October 2, 1961, at his domicile in Lake Charles, Louisiana. He left a last will bequeathing to his widow, Daisy Miller Boyd, one-half of the decedent's separate property and bequeathing the remainder of his property in trust for the three children, one of whom, Jeanne Bel, was a minor at the time of his death.

Plaintiffs Daisy Boyd Bel and Richard E. Gerard, Executors under decedent's will, filed the Federal Estate Tax Return and, after audit, were notified of a deficiency, which plaintiffs paid through two checks dated October 26, 1965 and December 7, 1965. Subsequently, the Executors filed with the District Director a Claim for Refund in the sum of $214,539.24. On October 20, 1966 the claim was disallowed by the District Director in its entirety. The Executors filed a protest against the determination made by the District Director and requested that the matter be referred to the Appellate Division of the Regional Commissioner's Office. Conference was held and the appellate conferee denied plaintiffs' claim in its entirety. This suit followed.

The deficiency claimed by the District Director, for which refund is sought, results from:

(1) Inclusion in the gross estate of the value of certain mineral right interests, shares of stock, and cash in bank owned by decedent's daughter, Jeanne Bel, who was a minor at the time of decedent's death. The value of these assets totals $30,933.61.

(2) Inclusion in the gross estate of $113,685.71, representing one-half of the proceed value of nine life insurance policies on the life of the decedent naming his wife, Daisy Boyd Bel, as owner.

(3) Inclusion in the gross estate of $125,000.00, representing one-half of the proceed value of an accidental death policy issued on decedent's life October 22, 1960, by Lloyds Group, Mid-Continent Underwriters, and owned by the decedent's three children.

(4) Reduction of the marital deduction from $1,088,990.32, representing the value of the property interest which passed from the decedent to Daisy Boyd Bel, his surviving spouse, to the extent of 50% of the value of decedent's separate property as claimed by plaintiffs under Internal Revenue Code Section 2056, to $917,639.38 as calculated by the District Director by reducing the marital deduction to the net disposable portion available under the law of Louisiana to a decedent who at the time of his death left three children surviving him.

(5) Refusal of the District Director to allow deduction of $25,000.00 representing additional fees and expenses incurred and to be incurred by the plaintiffs and claimed as additional administrative expenses under the provisions of Section 2053 of the Internal Revenue Code of 1954.

Two of the issues have pretty well been resolved and they will be disposed of first.

SHOULD THERE BE INCLUDED IN THE GROSS ESTATE OF THE DECEDENT THE PROCEED VALUE OF THE NINE LIFE INSURANCE POLICIES ON THE LIFE OF THE DECEDENT PURCHASED DURING THE MARITAL COMMUNITY, PAID FOR OUT OF COMMUNITY FUNDS, BUT WHICH NAMES THE DECEDENT'S WIDOW AS OWNER WITH ALL THE INCIDENTS OF OWNERSHIP?

██ This decision has been decided in favor of plaintiffs and against the defendant by the Fifth Circuit in Catalano v. United States, Fifth Circuit, December 16, 1969. The Government concedes that this Court must follow that decision and hold adversely to the United States on this issue. The defendant, however, has reserved the right to perfect an appeal in the event the

United States seeks a writ of certiorari in *Catalano*. The insurance policies involved must be held to be the separate property of Mrs. Bel, because she alone had the incidents of ownership, and the proceeds should not be included in Mr. Bel's community estate for tax purposes.

## IS THE ESTATE ENTITLED TO A DEDUCTION FOR ADDITIONAL ATTORNEYS' FEES IN THE AMOUNT OF $25,000?

■ During the examination of the return the Internal Revenue Service disallowed a deduction for attorneys' fees in the amount of $25,000 on the basis that the payment of the fees had not been substantiated. The defendant concedes that the amount is reasonable in view of the size and complexity of the estate, and that a deduction should be allowed upon proper proof of payment before final judgment is entered.

There remain the three issues still in dispute:

## 1. SHOULD THE VALUE OF THE PROPERTY OWNED BY THE DECEDENT'S MINOR DAUGHTER, JEANNE BEL, BE INCLUDED IN THE DECEDENT'S ESTATE?

The defendant argues that the value of the shares of stock and the mineral rights donated by the decedent to his minor daughter, Jeanne, as well as the cash in Jeanne's checking and savings account should be included in the gross estate of the decedent because of the provisions of Section 2036(a) and 2038 (a) (1) of the Internal Revenue Code.

Defendant's argument is based on the erroneous interpretations of Articles 221, 223, and 226 of the Louisiana Civil Code.

Article 221 states in part:

"The father is, during the marriage, administrator of the estate of his minor children and the mother in case of his interdiction or absence during said interdiction or absence. He or she shall be accountable both *for the property and revenues of the estates,* *the use of which he or she is not entitled to by law and for the property only of the estate the usufruct of which the law gives him or her."* (emphasis added)

Article 223 of the Code provides:

"Fathers and mothers shall have, during marriage, the enjoyment of the estate of their children until their majority or emancipation."

Article 224 of the Code provides:

"The obligations resulting from this enjoyment shall be: (1) the same obligations to which usufructuaries are subjected; (2) to support, to maintain and to educate their children according to their situation in life."

Articles 223 and 224 are qualified by Article 226 of the Code which says:

"This usufruct shall not extend to any estate, which the children may acquire by their own labor and industry, nor to such estate as is given or left them under the express condition that the father and mother shall not enjoy such usufruct. *Neither shall such usufruct extend to such estate as is given the children by donation inter vivos by either the father or the mother unless such estate shall have been donated by written act executed by the father or mother and the right to such usufruct has been reserved therein."* (emphasis added)

■ These articles give parents the right of enjoyment of the estates of children who are subject to their paternal authority. However, parents are precluded from the enjoyment of property donated to a child by one of the parents, unless the right of enjoyment is expressly reserved in the written act of donation. Civil Code Article 226, supra. Mr. Bel did not reserve the usufruct when he donated the mineral interests and the stock of his minor daughter, and therefore was precluded from the enjoyment of the property given to his child.

We find no merit to the Government's argument that since Section 20.2036–1

(b) (2) of the Treasury Regulations on Estate Tax provides that the phrase "use, possession, right to the income, or other enjoyment of the transferred property" embraces the right to apply income to the discharge of a legal obligation of the decedent, including a legal obligation to support a dependent during the decedent's lifetime, and since Mr. Bel allegedly, under Louisiana law, was under "a legal obligation to support his minor daughter and could have used the income from the property he transferred to his daughter to discharge his legal obligation to provide maintenance and support to his daughter, Article 2036(a) of the Internal Revenue Code and the regulations promulgated pursuant thereto require the inclusion of said assets in the decedent's gross estate."

Defendant cites several decisions to the effect that the value of trust property should be included in a grantor's gross estate where he retained the right to have the income used to discharge his legal obligation, and hence, reserved the possession or enjoyment of or the right to the income from this property. These cases are not pertinent. Here Mr. Bel made outright gifts of the mineral interests and stock to Jeanne. He did not stipulate the purpose for which the stock or mineral interests were to be used. The gifts were donations inter vivos with no strings attached and the decedent had no right to use the mineral interests and stocks or their revenues to discharge any legal obligation which he might have owed to his daughter. He attached no strings to the gifts. The gifts were irrevocable and unconditional. The only authority Mr. Bel had with respect to these interests under the law of Louisiana resulted from his being administrator of his children's estate during the marriage. This authority did not give Mr. Bel the right to use the money for Jeanne's support and education. Considering his financial condition, if Mr. Bel had applied to the court for authority to sell his daughter's property to pay for her support, the court would have dismissed his application out of hand.

In substance, defendant would have the court hold that the law of Louisiana is such that a parent cannot make an inter vivos donation to his minor child and escape the estate tax liability imposed by Sections 2036 and 2038 of the Internal Revenue Code if the parent dies before the child reaches majority. This is simply not the case with respect to an unconditional, irrevocable gift as is shown by the applicable Articles of the Louisiana Civil Code.

2. THE PROCEEDS OF AN ACCIDENTAL DEATH INSURANCE POLICY ON THE LIFE OF THE DECEDENT, TITLE TO WHICH WAS PLACED IN HIS CHILDREN'S NAME, SHOULD BE INCLUDED IN HIS GROSS ESTATE AS A GIFT IN CONTEMPLATION OF DEATH UNDER THE PROVISIONS OF SECTION 2035 OF THE INTERNAL REVENUE CODE OF 1954

Commencing in October, 1957, the decedent purchased for his children an accidental death policy of $250,000.00. Under the company's rules, a new policy was issued each year. Each policy contained the following provision:

"In consideration of the premium charged it is hereby understood and agreed that Ernest Fred Bel, James Boyd Bel, Jeanne Bel, heirs of the insured, is the owner of this policy, and the insured may not receive any benefits, exercise any right or enjoy any privilege provided under this policy. Notwithstanding anything in this policy to the contrary, the owner alone may receive every benefit, exercise every right and enjoy every privilege which, in the absence of this 'ownership of policy' provision would have been available to the insured under this policy."

The last accidental death policy, purchased by the decedent October 22, 1960, was in effect at the time of his death.

The full accidental death proceeds were paid to the beneficiaries by the insurer.

Intrinsically involved are two very different and distinct questions of law: (1) Was the accidental death policy taken out "in contemplation of death", as defined by Section 2035 of the Internal Revenue Code, and (2) If the policy does fall within this classification, what amount, in terms of dollars and cents, is to be included in the decedent's estate?"

*(1) Was the accidental death policy taken out "in contemplation of his death?"*

■■■ Section 2035 includes transfers in lieu of testamentary dispositions if made prior to death in an attempt to avoid estate tax or for any other death-connected reason. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867 (1931). Any transfer, if in contemplation of death, is within Section 2035. A special rule is applicable, however, if the transfer was within three years prior to the date of the decedent's death. In that circumstance, the transfer is rebuttably presumed to have been made in contemplation of death. The party opposing the payment of the estate tax must show, by a preponderance of the evidence, that the transfer was not made in contemplation of death. It is immaterial that the decedent absolutely transferred his entire title to interest in or possession of the property. Landorf v. United States, 408 F.2d 461, 187 Ct.Cl. 99 (1969).

■■■ The vagaries of each case must be closely examined, including the decedent's physical and mental condition "and all other attendant facts and circumstances" (Treas.Reg. § 20.2035–1) to determine whether a specific transfer was prompted by some death-oriented reason or by a life-motive. The phrase "contemplation of death," of course, does not mean the general expectation of death that all persons entertain. Its meaning, however, is not restricted to an apprehension that death is imminent. Treas.Reg. § 20.2035–1(c). Generally,

both life and death motives are involved in these transfers, and the inquiry, therefore, becomes whether the "life" motives were the "dominant controlling or impelling" reasons for the transfer. Allen v. Trust Co. of Georgia, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367 (1946).

The transfer was within the three year period; it was presumptively "in contemplation of death." The burden of going forward with the evidence to establish dominant life-motives is on plaintiffs. Admittedly, when the property transferred is life insurance, there is a death-connected motivation because life insurance proceeds( and an accidental death policy, more particularly because it has neither cash surrender nor loan value) are payable only when the insured dies. Therefore, it naturally may be more difficult for plaintiffs to show dominant life-motives.

■■■ Motivation is primarily a question of subjective intent. In this case, it is aptly stated by the plaintiff on page 28 of his original brief:

"Certainly it cannot be said that Mr. Bel, the decedent here, relatively young (48), in good health, active in business and sports, making a gift that had a legitimate business purpose of assisting his heirs in preserving his estate, could not possibly be considered as having made a gift of this policy in the fear that death was near at hand."

But, imminent death is not the only criterion by which a gift is deemed given "in contemplation of death," and due to the particular facts involved in this case, we cannot hold that plaintiff has shown by a preponderance of evidence that the gift was life-motivated, and therefore not "in contemplation of death."

## SINCE THE POLICY DOES FALL WITHIN SECTION 2035, WHAT AMOUNT IS INCLUDED IN THE ESTATE?

It is clear from the legislative history that Congress sought to enter the "premium payment" test with the ashes of the 1939 Code as an independent generating

force for the includability of insurance proceeds. Under these circumstances, we shall not adopt an expansive construction of section 2035 in the area of life insurance, which would permit that test to rise phoenix-like from the language of that section. Est. of Inez G. Coleman, 5299 P–H TC (1969).

Section 2035, by its terms, applies only to a "transfer" of an interest in property by a decedent. If the decedent had purchased a life insurance policy, initially retaining the ownership in himself, and thereafter assigned it to his children, there clearly would have been a "transfer" of an interest in the policy. If, on the other hand, decedent had given money to his children, and they, entirely on their own volition, had chosen to purchase an insurance policy on his life, it would equally be clear that only the money would have been "transferred."

The purpose of Section 2035 is to prevent the avoidance of estate tax through the use of gifts as a substitute for testamentary disposition of what would otherwise be included in the gross estate. Milliken v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931). The focus, therefore, must be on what the decedent parted with as a result of his payment of premiums in contemplation of death. Decedent held no interest whatsoever in the policy or its proceeds. His children were the sole owners of the policy and only they could deal with rights and benefits flowing therefrom. To be sure, these payments kept the economic substance of that ownership alive. But the decisive point is that what these payments created or maintained was theirs and not his. Under these circumstances, we can see no basis for concluding that there was a constructive transfer of an interest in the policy. The only thing diverted from his estate was the actual money paid. Est. of Inez Coleman, supra.

Only the dollar amount of the premiums paid in contemplation of death is includable in the gross estate of the decedent herein, which amounts to $160.00 per year (decedent's ½ community) for three years or $480.00.

## THE MARITAL DEDUCTION OTHERWISE AVAILABLE TO THE DECEDENT'S ESTATE, SHOULD BE LIMITED TO HIS "DISPOSABLE PORTION" AS DEFINED BY LOUISIANA LAW

In his will, the decedent bequeathed to his surviving spouse one-half of all of the separate property that he owned at his death and confirmed to his spouse the usufruct which the laws of Louisiana allowed her on the decedent's one-half share of their community property. Under 5 West's Louisiana Statutes Annotated, Civil Code, Article 1493, however, a decedent who leaves three or more children surviving him cannot dispose of more than one-third of his estate to persons other than his children. Article 1495 of the Louisiana Civil Code states that in such cases the children are "forced heirs," because the donor cannot deprive them of the portion of his estate reserved for them by law, except in cases where he has just cause to disinherit them. On January 31, 1962, the decedent's surviving spouse and his three surviving children executed a Notarial Act under which the surviving children waived and renounced their right to contest or oppose the bequest that the decedent made to his surviving spouse, and the surviving spouse renounced her usufruct as to the cash owned by or accruing to the decedent's share of their community estate and acknowledged that her usufruct as to certain mineral royalty interests formerly owned by the community did not entitle her to the proceeds on production accruing to the decedent's one-half community share of such royalty interests.

Section 2056 of the Internal Revenue Code of 1954, Appendix A, *infra*, allows the estate of a decedent a deduction from the gross estate measured by the value of the property which passes to the decedent's surviving spouse limited to one-half of the decedent's "adjusted gross estate." For the purpose of the

marital deduction thus granted, the "adjusted gross estate" is computed by subtracting from the entire value of the decedent's gross estate certain expenses, indebtedness, taxes, losses, and the decedent's interest in any community property.

The estate tax return filed by the decedent's executors was examined by the Internal Revenue Service, and as a result of that examination, the marital deduction claimed by the executors thereon was adjusted to $917,639.38. The decedent's executors, however, claim that the marital deduction to which the estate is entitled should be $1,088,990.32, or one-half of the decedent's adjusted gross estate. No issue is raised as to the accuracy of the computation of the marital deduction under defendant's theory of the case, and the record contains no evidence that would dispute the presumptive validity which, under law, attached to the defendant's determination in this regard.

■ Prior to the Revenue Act of 1948 there was no provision permitting the deduction from the gross estate of property passing to the surviving spouse. The primary purpose for adopting the provisions now contained in Section 2056 of the Code was to equalize the situation that existed between community and noncommunity states with respect to federal estate taxes. To accomplish this purpose, the marital deduction provisions of the Code allowed a deduction equal to the value of any interest in property which passes or has passed, as of the date of death, from the decedent to his surviving spouse, but not to exceed 50 percent of the adjusted gross estate.

A reading of the statute reveals the Congressional intent regarding the marital deduction. The estate may avail itself of a deduction for property going to the surviving spouse, if the following requirements are satisfied:

(1) The property must pass *from* the decedent *to* the surviving spouse.

(2) The property must pass to the surviving spouse *in all events* and such passage must not be subject to failure or termination by reason of lapse of time, the occurrence of an event or contingency, or the failure of an event or contingency to occur.

(3) All property in which any person other than the surviving spouse inherits an interest is considered, for purposes of the marital deduction, as passing from the *decedent* to the *person* or *persons* inheriting said interest.

(4) If the person or persons inheriting an interest from the decedent disclaims part or all of their interest in the property which would otherwise inure to their benefit as a result of their heirship, and, as a result of such disclaimer, the property passes to the surviving spouse, for purposes of the marital deduction, the property is considered as having passed from the decedent to said heir or heirs and then to the surviving spouse, and not directly from the decedent to the surviving spouse as required by Section 2056(a).

(5) Any interest in property which devolves to the surviving spouse as a result of the disclaimer by an heir of the decedent cannot qualify as property which passes or has passed from the decedent to the surviving spouse for the purposes of determining the amount of the allowable marital deduction.

■ Under Louisiana law, the forced heirs of a decedent are seized of right, by his death, of the property reserved to them by law. Louisiana Civil Code Article 1607. Although a forced heir in Louisiana is not required to claim his legitime, and may waive his rights to do so, the right needs only to be asserted to be allowed. Succession of Fertel, 208 La. 614, 23 So.2d 234 (1945). Forced heirs of a decedent are, at the instant of the decedent's death, vested with the right to receive the legitime that the laws of Louisiana set

aside to them, and this interest is inherited by the heirs from their decedent within the meaning of Section 2056(e)(2) of the Internal Revenue Code of 1954.

 We agree with the Government on this issue in the instant case. The provisions of Section 2056(d)(2) of the Internal Revenue Code. Section 2056(d)(2) of the Code was amended by Section 1(a) of the Act of October 4, 1966 (P.L. 89–621, 80 Stat. 872) to provide that if an interest passes to the surviving spouse as the result of a disclaimer, and if such disclaimer is made before the date prescribed for filing the estate tax return and the person making the disclaimer does not accept the interest before making the disclaimer, the interest shall be considered as passing from the decedent to the surviving spouse for purposes of the marital deduction. Section 1(b) of the Act of October 4, 1966, states that the amendment is applicable only with respect to estates of decedents dying on or after the date of the enactment of the Act, October 4, 1966. Thus the relief provisions of this Act are not applicable to the estate in question.

The privilege of the decedent's children to waive the rights to which they would otherwise be entitled under the laws of Louisiana, and the validity of their waiver is in no way questioned. However, the Internal Revenue Code requires that the disclaimer of the forced heirs be disregarded *only* for the purpose of computing the marital deduction allowable to the decedent's estate.

On page 21 of their original brief, the plaintiffs states:

> The three Bel children had the right to demand that the bequest made by Mr. Bel to his wife, for the purpose of taking full advantage of the provision accorded him under Section 2056 of the Revenue Code, be reduced to the disposable portion of his estate, *if* those heirs had desired to do so.

It was the *existence* of this right, which the plaintiffs recognized, and not

the *exercise* thereof, which prohibits the decedent's estate from claiming a marital deduction greater than the disposable portion possessed by the decedent under the laws of the State of Louisiana. It is not necessary that the forced heirs exercise that right, and it certainly is not necessary that the United States be entitled to exercise that right for them, before the estate's marital deduction can be limited to the decedent's disposable portion.

Our conclusion is that the decedent's estate is not entitled to a greater marital deduction than has been previously allowed and that the plaintiffs are not entitled to recover on this issue.

Counsel will prepare and submit a judgment in accordance with the conclusions here expressed.