**In re ESTATE of Morris R. SILVERMAN.**

**Avrum SILVERMAN, Executor, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Respondent.**

**No. 931, Docket 74–2226.**

United States Court of Appeals, Second Circuit.

Argued May 5, 1975.

Decided July 21, 1975.

Moses M. Cohen, New York City, for petitioner-appellant.

Jeffrey S. Blum, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Loring W. Post, Attys., on the brief), for defendant-respondent.

Before FEINBERG, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

This appeal by Avrum Silverman, executor of the estate of Morris R. Silverman, from a decision of the Tax Court in favor of the Commissioner of Internal Revenue raises two questions: Was a transfer of a $10,000 whole life insurance policy by decedent to his son Avrum some six months before decedent's death made in contemplation of death and, if so, what was the value of the interest transferred to be included in decedent's gross estate? The Tax Court answered the first question in the affirmative and the second by including in decedent's estate 88.71 per cent of the policy proceeds, or $8,871. Were the only question before us the correctness of the first ruling, we would simply affirm on the opinion of Judge Sterrett, reported at 61 T.C. 338 (1973), to which we refer the reader for relevant details. On that factual issue we believe the Tax Court was correct. Its finding was, in any event, not clearly erroneous.

The second question requires greater analysis and some further exposition of the facts. Decedent had purchased the policy on his life in May 1961. His wife, Mabel, was the primary beneficiary and Avrum was the secondary beneficiary.

Decedent's wife died in December 1965, and decedent died in July 1966. Six months earlier, decedent had assigned to Avrum all of decedent's interest in the life insurance policy. Before that time, decedent had made 55 monthly premium payments of $52.60, totalling $2,893.00. After the assignment and until his father's death, Avrum made seven monthly payments totalling $368.20.

Avrum, as executor, did not include the $10,000 proceeds of the policy in the estate tax return. In the Tax Court, the Commissioner took the position that the entire amount was so includable under section 2035 of the Internal Revenue Code of 1954, 26 U.S.C. § 2035.[1] The taxpayer (executor) argued that even if the assignment of the policy was held to be in contemplation of death, at most only the dollar amount of the premiums paid by decedent within the three-year statutory period before his death should be included in his estate. The Tax Court rejected both contending positions. Instead, it allocated the proceeds according to the percentage of premiums paid by decedent and his son. Since 88.71 per cent of all the premiums had been paid by decedent, $8,871 of the $10,000 insurance proceeds was included in the gross estate. This appeal followed.

If a transfer is made in contemplation of death, section 2035(a) directs that there be included in the decedent's gross estate "the value" of the decedent's interest in the property transferred. Determining the value of a transferred interest in a life insurance policy, however, is no easy task. Within the past few years the problem has engendered a fair amount of litigation and commentary.[2] The situation has been complicated by a change in position of the Internal Revenue Service[3] and the earlier elimination of premium payments as a test for the inclusion of life insurance proceeds in decedents' estates.[4]

1. Section 2035 provides:

(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) Application of general rule.—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.

2. See, e. g., Rosenberg, Section 2035—Premium Payments Made in Contemplation of Death, 51 Taxes 468 (1973); Note, Insurance Policies Transferred in Contemplation of Death—The Premium Payment Test Revised?, 44 U.Colo.L.Rev. 633 (1973); Note, 26 Vand.L. Rev. 384 (1973); Rhodes, Contemplation of Death, The Problem of Insurance Premiums, 24 Tax Lawyer 589 (1971); Note, 82 Harv.L. Rev. 1765 (1969). See also Lowndes & Stephens, Identification of Property Subject to the Federal Estate Tax, 65 Mich.L.Rev. 105, 120–25 (1966).

3. In Rev.Rul. 67–463, 1967–2 Cum.Bull. 327, the Service announced that for a policy transferred prior to three years before death any premiums paid by decedent in contemplation of death within the three-year period would result in the estate being charged with a proportionate interest in the policy proceeds equal to the proportion of the premiums paid within the three-year period to the total premiums paid on the policy. Not long afterwards the Service, stung by defeat in First Nat'l Bank of Midland v. United States, 423 F.2d 1286 (5th Cir. 1970), retreated from that position. Rev. Rul. 71–497, 1971–2 Cum.Bull. 329, revoked Rev.Rul. 67–463 and held instead that for a policy transferred more than three years prior to death only the premiums paid in contemplation of death would be included in the estate. Proceeds of a policy transferred within the three-year period in contemplation of death would be included, however.

4. Section 811(g)(2)(A) of the Internal Revenue Code of 1939, which dealt with proceeds of life insurance, contained a premium payment test for life insurance proceeds which required including in decedent's estate that proportion of the proceeds equal to the proportion of the premiums on the policy paid directly or indirectly by the decedent. When the Code was

There are several ways in which an interest in an insurance policy can be transferred in contemplation of death. First, the policy might be transferred[5] more than three years prior to the decedent's death with the decedent paying the premiums until his death. In such a situation the cases seem to agree that only premiums paid by the decedent within the three-year period, and no part of the policy proceeds, are to be included in the estate. *Bintliff v. United States*, 462 F.2d 403 (5th Cir. 1972); *First National Bank of Midland v. United States*, 423 F.2d 1286 (5th Cir. 1970); *Estate of Inez G. Coleman*, 52 T.C. 921 (1969) (Tannenwald, *J.*). The reasoning behind this result seems to be that by transferring the policy prior to the critical three-year period, the decedent has divested himself of both the policy and its fruits; therefore, neither can be considered transferred in contemplation of death. This leaves only premiums paid within the three-year period as possibly transferred in contemplation of death, and therefore it is only those premiums that are included in the transferor's estate. Since the issue is not before us, we express no view as to this result, and only include the reasoning for purposes of discussion.[6]

Another possibility is for the decedent to transfer, see note 5 supra, the entire policy within the three-year period and continue paying the premiums. The controversy in this area has apparently centered on whether there is a "transfer" of a policy when it is purchased in the name of another but paid for by the insured. Even in that situation, most cases have held that the proceeds of the policy will be included in the estate. *First National Bank of Oregon v. United States*, 488 F.2d 575 (9th Cir. 1973); *Detroit Bank & Trust Co. v. United States*, 467 F.2d 964 (6th Cir. 1972), cert. denied, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *Bel v. United States*, 452 F.2d 683 (5th Cir. 1971), cert. denied, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972). But see *Mercantile Trust Co. v. United States*, 312 F.Supp. 108 (E.D.Mo. 1970); *Gorman v. United States*, 288 F.Supp. 225, 234 (E.D.Mich.1968).[7] This result, different from that in the first example, has been justified because the entire policy is transferred in contemplation of death. Since the valuation of property so transferred is made at the time of death, Treas.Reg. § 20.2035–1(e), 26 U.S.C. § 2031, the proceeds of the policy are included in the estate.

In the situation before us we have a variation on the second theme. The transfer was made six months prior to death but the transferee thereafter paid the premiums. Had decedent died immediately after transferring the policy we have no doubt that the entire proceeds would have been included in the estate. Similarly, had decedent paid all the premiums up to his death the entire proceeds would have been included under the authorities cited above. What effect, then, does the fact that the taxpayer paid a few premiums have on this result? The Tax Court decided that the policy proceeds, less a pro-rata share at-

---

revised in 1954, the replacement, section 2042, did not contain a premium payment test. See the discussion in Note, *supra*, 44 U.Colo.L.Rev. at 637–47.

5. A transfer by the insured can be accomplished both by the purchase of the policy in the name of the insured and then the assignment of it to another, and also by the purchase directly in the name of another, using the insured's money. In either case a transfer for purposes of section 2035 can be said to have occurred. See *First Nat'l Bank of Oregon v. United States*, 488 F.2d 575, 577 (9th Cir.

1973); *Bel v. United States*, 452 F.2d 683, 691–92 (5th Cir. 1971), cert. denied, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972).

6. We realize that just by stating that we express no view, some will assume that we intend to throw doubt on these cases. We do not so intend; we merely express no view.

7. *Gorman* has been thoroughly criticized. See, e. g., Note, 82 Harv.L.Rev. 1765 (1969); *First Nat'l Bank of Oregon, supra,* 488 F.2d at 578 n. 5; *Bel v. United States, supra,* 452 F.2d at 691.

tributable to Avrum's premium payments, should be included in the estate.

The Commissioner "does not renew"[8] his contention, made in the Tax Court, that the entire $10,000 proceeds should be included in spite of Avrum's payments. Instead, content to collect the estate tax on 88.71 per cent of that amount, the Commissioner merely asks that we affirm the Tax Court. Accordingly, we turn to the arguments of taxpayer that the Tax Court was wrong.

■ Taxpayer makes alternative contentions. The first is that only the cash surrender value of the policy at the time of transfer ($1,120) should be included in the gross estate. This legal position is not without logic, since that is the sum Avrum would have received had he cashed in the policy when he received it. Nevertheless, we can find no support for this position; and we have just noted that had decedent died immediately after the transfer, the entire proceeds would have been included in the estate. Thus, the cash surrender value at the time of transfer is irrelevant. This is so because the value of property transferred in contemplation of death is taken as of the date of death (or a later alternate date), not the date of transfer. We do not see why there should be an exception to this usual rule in the case of insurance policies transferred within the three-year period.

Taxpayer's second argument is that only the premiums paid by decedent in the three-year period ($1,525.40) should be included in the estate. For this result he cites *Bintliff, Estate of Coleman, First National Bank of Midland*, and *Gorman*. As we have noted above, the first three of these cases involved transfers of policies prior to the statutory period, and therefore do not apply here. Also, we decline to follow *Gorman*, whatever its precedential value may be in light of the criticism heaped upon it. Thus we reject taxpayer's second position as well.

This suffices to dispose of the case before us, and we want to make clear that we limit ourselves to that. We freely admit some uneasiness about the proper basis for holding that Avrum's payments in the last six months of his father's life changes the result from the situation where a decedent continues to pay the premiums until his death. In giving Avrum credit for his payments by pro-rating the proceeds of the policy here, the Tax Court relied on *Liebmann v. Hassett*, 148 F.2d 247, 251 (1st Cir. 1945), which reached a similar result under section 302(c) of the Revenue Act of 1924,[9] and on Treas.Reg. § 20.2035–1(e).[10] But it is not immediately apparent that payments of premiums on an existing insurance policy are "improvements or additions to" the property here (an insurance policy), with a "resulting enhancement" in its value.[11] And even if that is ac-

---

8. Commissioner's Brief, at 13.

9. Section 302(c) provided that a decedent's estate included the value of all property—

To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in con-

templation of death within the meaning of Part I of this title; . . .

10. Treas.Reg. § 20.2035–1(e) provides in part:

The value of an interest in transferred property includible in a decedent's gross estate under this section is the value of the interest as of the applicable valuation date. In this connection, see sections 2031, 2032, and the regulations thereunder. However, if the transferee has made improvements or additions to the property, any resulting enhancement in the value of the property is not considered in ascertaining the value of the gross estate. . . .

11. See Lowndes & Stephens, *supra*, 65 Mich.L. Rev. at 125.

cepted, the question remains as to the basis for holding the "enhancement" to be a portion of the policy proceeds rather than the amount paid in premiums.

Another possible way of justifying pro-rating the proceeds here is to analogize to a case where a father and son each paid one-half of the first premium of an insurance policy on the life of the father, owned by the son. If the father were thereafter to die, it is arguable that father and son each "purchased" one-half of a policy, so that the estate would be charged with one-half of the proceeds of the policy under section 2035, and the other half would go directly to the son without being included in the estate. Thus, in this case, Avrum also might be said to have "purchased" a portion of the policy through his payment of a few of the premiums so that pro-rating the proceeds makes sense. But such a holding might call into question the first group of decisions discussed earlier. They indicate that a decedent's payment of premiums on a policy transferred prior to the three-year period does not result in his "ownership" of a pro-rata share of the proceeds. These cases might be read to suggest that only the actual premiums paid by Avrum ($368.20), rather than his pro-rata share of the proceeds ($1,129), should have been excluded from his father's gross estate.[12]

We do not have to resolve these difficulties. As we have noted, the Commissioner has receded from his original contention that 100 per cent of the proceeds should have been included. Although he has also referred to another possible result, see note 12 supra, he simply asks us to affirm the judgment of the Tax Court. We do not expect taxpayer to object to our failure to consider suggestions not pressed by the Commissioner and we take no position on them. Since we have rejected the two theories put before us by taxpayer, the judgment is affirmed.

---

12. The Commissioner has also pointed to this possibility, citing Rev.Rul. 71–497, 1971–2 Cum.Bull. 329, and *Estate of Peters v. Commissioner*, 386 F.2d 404 (4th Cir. 1967), but does "not wish to pursue that point here." Commissioner's Brief, at 17.