ESTATE OF TETSUO KURIHARA, DECEASED, ELEANORE KURIHARA, ADMINISTRATRIX, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10402–81.     Filed January 5, 1984.

*Ronald Dreier,* for the petitioner.
*Patrick E. Whelan,* for the respondent.

OPINION

TANNENWALD, *Judge*: Respondent determined a deficiency of $317,513.19 in petitioner's Federal estate tax. The sole issue for decision is whether petitioner's gross estate includes, pursuant to the provisions of section 2035,[1] the proceeds of an insurance policy on decedent's life owned by a trust where decedent gave the trustees the money earmarked for the payment of the initial premium on the policy.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect at the time of death, and all Rule references are to the Tax Court Rules of Practice and Procedure. Sec. 2035 has been amended by the Revenue Act of 1978 (Pub. L. 95–600, 92 Stat, 2763) and the Economic Recovery Tax Act of 1981 (Pub. L. 97–34, 95 Stat. 317). See also Pearle, "Application of Section 2035 to Life Insurance Owned by a Third Party—Recent Developments," Estates, Gifts and Trusts Journal, Sept.–Oct. 1983, at 28–32.

The case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner is the Estate of Tetsuo Kurihara (Kurihara) represented by its administratrix, Eleanore Kurihara. At the time she filed the petition, Eleanore Kurihara resided in Bedminster, N.J.

By a trust agreement, dated July 26, 1977, Kurihara, as grantor, and Daniel and Harold Topper (the Toppers), as trustees, agreed to the creation of an irrevocable trust for the benefit of Kurihara's spouse and two children. The trust agreement recited that Kurihara, the "initiator" of life insurance policy number 10010395, issued by the Columbian Mutual Life Insurance Co. (Columbian Mutual) on his life, assigned to the trustees all right, title, and interest in such policy.

Also on July 26, 1977, Daniel Topper, as trustee, applied for $1 million of insurance on Kurihara's life. Kurihara signed the application as the proposed insured. The Toppers, as trustees, were named the owners and beneficiaries. The application specifically designated the policy bearing the number 10010395. The application also provided that the policy "shall not take effect * * * unless and until the policy has been issued and delivered and the full first premium * * * has been paid and accepted by the Company during the lifetime and condition of health of the Proposed Insured as stated in the application." The aforesaid policy (1-year renewable and convertible term) was issued on August 20, 1977, with a "policy date" of August 1, 1977, and with an annual premium of $4,040.

On September 8, 1977, Kurihara drew a check to the order of "Daniel Topper, Trustee" for $4,040.[2] A notation on the check stated that the funds were for the "premium for Life Ins. No. 10010395 Columbian Mutual Life." Topper endorsed the check to the order of Columbian Mutual in payment of the initial premium.

Pursuant to the terms of both the insurance policy and the trust agreement, the trustees owned and were the beneficiaries of the policy.[3] Kurihara retained no interest in the trust,

---

[2]Petitioner concedes that this amount is includable in the estate under sec. 2035.
[3]The trustee's obligations concerning premium payments were as follows:

reserving only the right to add additional life insurance policies on his life to the trust.

Kurihara died in an automobile accident on November 16, 1977, at the age of 43. After Kurihara's death, the trustees received the insurance policy proceeds of $1 million plus interest of $9,374.97. Petitioner did not include any part of the $1,009,374.97 in the gross estate.

Section 2035(a) provides that "the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death." Petitioner contends that Kurihara transferred only $4,040 in cash. Respondent argues that, under the doctrine of substances over form, Kurihara's cash gift should be equated with the payment of the premium and that this premium payment constituted a transfer of the entire policy, with the result that the proceeds thereof should be included in the gross estate.

The case law which has been developed in respect of the applicability of section 2035 to life insurance has not been a model of clarity, at least insofar as policies taken out within 3 years of the death of the insured are concerned. The results of the cases can be readily synthesized, but the same cannot be said of the language of the opinions. We think it would be helpful to review the case law and to attempt, as Justice Cardozo once remarked, to discharge our responsibility to "gather up the driftwood and leave the waters pure." See *Hicks v. Commissioner*, 47 T.C. 71, 74 (1966). In so doing, we may not leave the waters as pure as we would like, but

---

3. Payment of premiums. The trustees shall be under no obligation to pay the premiums which may become due and payable under the provisions of such policy of insurance, or to make certain that such premiums are paid by the Grantor or others, or to notify any persons of the nonpayment of such premiums, and they shall be under no responsibility or liability of any kind in case such premiums are not paid, except that they shall apply any dividends received by them on such policy to the payment of premiums thereon. Upon notice at any time during the continuance of this trust that the premiums due upon such policy are in default, or that premiums to become due will not be paid, either by the Grantor or by any other person, the Trustees, within their sole discretion, may apply any cash values attributable to such policy to the purchase of paid-up insurance or of extended insurance, or may borrow upon such policy for the payment of premiums due thereon, or may accept the cash values of such policy upon its forfeiture. * * * If Tetsuo Kurihara, the insured under such policy of insurance, becomes totally and permanently disabled, within the meaning of such policy, and because thereof the payment of premiums, or any of them, shall, during the pendency of such disability, be waived, the Trustees, upon receipt of such knowledge, shall promptly notify the insurance company which has issued such policy, and shall take any and all steps necessary to make such waiver of premium provision effective.

hopefully we will "introduce some certitude in a landscape of shifting sands." See *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7, 10 (1st Cir. 1966).

We start our review our own decision and opinion in *Estate of Coleman v. Commissioner*, 52 T.C. 921 (1969). In that case, more than 3 years prior to decedent's death, her children purchased as owners and beneficiaries an insurance policy on her life. The decedent paid all the premiums ($4,821) on the policy, of which $3,373 was paid within 3 years of death. The parties agreed that only $1,686.50 of this latter amount was paid in contemplation of death. Respondent sought to have included in the gross estate, as a gift in contemplation of death, the same proportion of the proceeds of the policy as the $1,686.50 premiums paid in contemplation of death bore to the total premiums paid ($4,821). Petitioner, relying heavily on the abolition of the "premium payment" test when section 2042 was enacted in 1954, contended that only the $1,686.50 should be included. We refused fully to accept petitioner's reliance on section 2042 and its legislative background, although we did view the circumstances surrounding the enactment of that section as a deterrent to the adoption of respondent's position. We nevertheless held for petitioner. See 52 T.C. at 922–923. In so holding, we disagreed with Rev. Rul. 67–463, 1967–2 C.B. 327, which stated that the mere payment of premiums by the decedent within 3 years of death operated as the transfer of an interest in the proceeds of insurance, even though the incidents of ownership were transferred more than 3 years prior to death. 52 T.C. at 923. We then went on to state (p. 923):

If the decedent had purchased a life insurance policy, initially retaining the ownership in herself, and thereafter assigned it to her children, there clearly would have been a "transfer" of an interest in the policy. If, on the other hand, decedent had given money to her children, and they, *entirely on their own volition*, had chosen to purchase an insurance policy on her life, it would be equally clear that only the money would have been "transferred."

The purpose of section 2035 is to prevent the avoidance of estate tax through the use of gifts as a substitute for testamentary disposition of what would otherwise be included in the gross estate. The focus, therefore, must be on what the decedent parted with as a result of her payment of the premiums in contemplation of death. Decedent held no interest whatsoever in the policy or its proceeds. Her children were the sole owners of the policy and only they could deal with rights and benefits flowing therefrom. To be sure, these payments kept the economic substance of that ownership alive.

*But the decisive point is that what these payments created or maintained was theirs and not hers.* In these circumstances, we can see no basis for concluding that there was a constructive transfer of an interest in the policy. The only thing diverted from her estate was the actual money paid. [Citations omitted. Emphasis added.]

Finally, we stated that we agreed with *Gorman v. United States*, 288 F. Supp. 225 (E.D. Mich. 1968), which we described as having decided the "precise issue" involved in *Coleman*.[4]

We now turn to a tracing of the fate of *Coleman* and its rationale. As that tracing will show, the decision in *Coleman* remains unchallenged, although, as often occurs, segments of the rationale have been lifted out of the context of our opinion and rejected as applied to different factual circumstances.

In *First National Bank of Midland, Texas v. United States*, 423 F.2d 1286 (5th Cir. 1970), the Fifth Circuit Court of Appeals held that, where that policies in question were issued to decedent's daughters, as owners and beneficiaries, more than 3 years prior to death, no part of the proceeds was includable in decendent's gross estate even though he had paid the premium. In so holding, the court relied on *Gorman v. United States* (also apparently assuming, as we had, see note 4 *supra*, that the policy in that case had been taken out more than 3 years prior to death) and on our opinion in *Coleman*, and rejected the application of Rev. Rul. 67–463, *supra*. 423 F.2d at 1288.

Next in sequence is Rev. Rul. 71–497, 1971–2 C.B. 329, in which respondent revoked Rev. Rul. 67–463 and ruled that no part of the proceeds of a policy taken out and transferred more than 3 years prior to death would be includable in the gross estate, stating that he would follow *First National Bank of Midland* but that the amount of the premiums paid by decedent within the 3-year period would be so included, citing

---

[4]In concluding that *Gorman* and *Coleman* involved the same issue, we were influenced by the District Court's assumption that "the decedent transferred all the incidents of ownership to the beneficiary at least 3 years before the former's death." See *Gorman v. United States*, 288 F. Supp. 225, 232. It appears, however, from the stipulation of facts in *Gorman* that the policy in question was taken out in May 1957 and that the decedent died within 1 year, to wit, on Mar. 25, 1958. See 288 F. Supp. at 234–237. In *Coleman*, we also referred to *First National Bank of Midland, Texas v. United States*, an unreported case (W.D. Tex. 1968, 23 AFTR 2d 69–1806, 69–1 USTC par. 12,574), in which the Government had been sustained where premiums were paid by the decedent within 3 years of death but the policy had been taken out more than 3 years prior to death. The decision of the District Court was later reversed. *First National Bank of Midland, Texas v. United States*, 423 F.2d 1286 (5th Cir. 1970).

*Coleman* and *Gorman.*[5] Respondent ruled, however, that, in the case of an accidental death policy for a 1-year term, purchased 9 months before death with the decedent's children as owners and beneficiaries, the proceeds were includable in the gross estate when the decedent paid the full premium. In so ruling, respondent anticipated the decision of the Fifth Circuit in *Bel v. United States*, 452 F.2d 683 (5th Cir. 1971).

In *Bel,* a 1-year-term accidental death policy had been purchased more than 3 years prior to death but the last 1-year term had obviously commenced within the proscribed 3-year period; decedent's children were the owners of the policy from inception and decedent had paid all the premiums. The Fifth Circuit held that the proceeds of the policy were includable in decedent's gross estate on the ground that the policy, being a 1-year-term accidental death policy, was brought into existence each year and that, by paying the premiums each year, "The decedent, and the decedent alone, beamed the accidental death policy at his children, for *by paying the premium he designated ownership of the policy and created in his children all of the contractual rights to the insurance benefits. These were acts of transfer.*" (See 452 F.2d at 691; emphasis added.) In so holding, the Court of Appeals adopted our "decisive point" in *Coleman* as to what the payment of premiums "created"[6] (see 52 T.C. at 923, quoted at p. 55 *supra*) and concluded that this constituted a transfer of the proceeds of the accidental death policy. However, the court rejected our use of the section 2042 analogy in *Coleman*, which it described as having "persuaded a majority of the Tax Court" (see 452 F.2d at 689), although our use of such analogy was clearly not the touchstone of our decision (see 52 T.C. at 922–923). It also declined to apply the "diversion" theory of *Coleman* to the factual situation in *Bel* (see 452 F.2d at 690), although here again it is clear that we articulated that theory in the context of the circumstances of *Coleman* and gave no indication that it was to be applied in a

---

[5] Apparently respondent made the same assumption that we and the Fifth Circuit had made regarding the factual situation in *Gorman.*

[6] The court of Appeals made the following statement (*Bel v. United States*, 452 F.2d 683, 690):

"In *Coleman* the premium payments were made on a policy that was brought into existence more than three years prior to the decedent's death. Thus, the original contractual rights and ownership of the policy in *Coleman* were *created outside the presumptive period,* * * * [Emphasis added.]"

different context (see 52 T.C. at 923, quoted at p. 55 *supra.*)[7]

*Bintliff v. United States,* 462 F.2d 403 (5th Cir. 1972), involved two policies, one being a straight life policy issued in 1955 and the second being a straight life policy resulting from the conversion in 1961 of two term policies issued in 1957 and 1958. The decedent's wife was the owner and beneficiary of both policies and had paid the premiums until July 1, 1960, after which decedent paid the premiums until his death in 1963. Although the proceeds of the policies were includable in decedent's gross estate on a ground unrelated to the issue involved herein, the Fifth Circuit made clear that, absent those grounds, only the premiums paid in contemplation of death would have been includable in the gross estate[8] and made the following statement, which, in light of the supporting citations, indicates some ambivalence as to the rule obtaining in that circuit (see 462 F.2d at 406):

It is settled law in this court that the premiums paid in contemplation of death, not the whole of the life insurance proceeds, are includable in the decedent's gross estate under Section 2035. *See* First National Bank of Midland v. United States, 5 Cir. 1970, 423 F.2d 1286. *But see* Bel v. United States, *supra.*

Next in sequence is *Detroit Bank & Trust Co. v. United States,* 467 F.2d 964 (6th Cir. (1972). In that case, decedent did not pay the premiums directly to the insurance company (as had been the case in *Coleman, Gorman, First National Bank of Midland, Bel,* and *Bintliff*) but transferred funds to a trust within 3 years of death. The trust agreement provided that the funds (and subsequent funds which decedent agreed to supply to the trust) could only be used to pay the premiums on a life insurance policy which the trustee was to acquire and did acquire as owner and beneficiary. The Sixth Circuit recognized that decedent had never owned the policy and therefore could

---

[7]The Court of Appeals was also critical of *Gorman v. United States,* note 4 *supra.* See 452 F.2d at 691, where the court also recognized (as it had not in *First National Bank of Midland, Texas v. United States,* 423 F.2d 1286 (5th Cir. 1970)) that the policy in *Gorman* had come into existence within 3 years of death. See p. 56 *supra.*

[8]The court made no point of the fact that the second policy represented a conversion within the proscribed 3-year period, presumably on the premise that the rights obtained therefor stemmed from the early policies and were therefore "created" by those policies. See note 6 *supra.* Similarly, no issue has been raised herein as to the renewal or conversion feature. In the case of a 1-year-term accidental death policy, each year stands on its own feet. See *Bel v. United States,* 452 F.2d 683 (5th Cir. 1971).

not have transferred the policy in the formal sense. It adopted the "beamed transfer" approach of *Bel v. United States, supra*, rejected the section 2042 analogy, and held the proceeds of the policy includable in decedent's estate on the ground that, in light of the decedent's obligation to provide funds for the payment of the premiums and the trustee's obligation to use those funds solely for that purpose, the trustee was simply "an agent [of the decedent] for purchase of the insurance."[9] See 467 F.2d at 969.

In *First National Bank of Oregon v. United States*, 488 F.2d 575 (9th Cir. 1973), two 20-year term policies were issued on decedent's life in 1966 with decedent's wife as owner and beneficiary. Decedent paid the premiums to the insurance company. Death occurred within 3 years. The Ninth Circuit Court of Appeals held the proceeds of the insurance includable in the decedent's gross estate following *Detroit Bank & Trust Co. v. United States, supra*, and *Bel v. United States, supra*. Distinguishing our decision in *Coleman* (see 488 F.2d at 577 n. 2), it rejected our use in *Coleman* of the section 2042 analogy (see 488 F.2d at 578) and also attributed a wider application of our "diversion" theory than was warranted (see 488 F.2d at 578 n. 3 and pp. 55, 57 *supra*).

The problem was next discussed in *In re Estate of Silverman*, 521 F.2d 574 (2d Cir. 1975). That case involved a special situation relating to the apportionment of proceeds of insurance on the life of the decedent. The Second Circuit Court of Appeals agreed with our holding in *Coleman* but carefully refrained from articulating what would happen where the policy was taken out within the 3-year period, although the court indicated its belief that the decided cases stood for the proposition that a transfer of the proceeds of life insurance occurs when the policy is, within that period, purchased in the name of a person other than the decedent and paid for by the decedent. See 521 F.2d at 576.[10]

Finally, we come to *Hope v. United States*, 691 F.2d 786 (5th Cir. 1982). In that case, the decedent created a trust within the

---

[9]The Sixth Circuit refers to the fact that the decedent in *Bel v. United States* also employed a trust technique with respect to the insurance policy. Neither the opinion of the Fifth Circuit nor that of the District Court (310 F. Supp. 1189) indicates that such was the case.

[10]The Court of Appeals noted that *Gorman v. United States*, note 4 *supra*, "has been thoroughly criticized." 521 F. 2d at 576 n. 7.

3-year proscribed period with an initial transfer of $100. Thereafter, and also within that period, the decedent transferred $2,100 to the trustee, which he in fact used to pay three initial premiums of $713 each on policies on decedent's life of which the trustee was the owner and beneficiary. The District Court had held that, for purposes of section 2035, the decedent transferred the policies to the trust but that the transfers were not in contemplation of death. The Fifth Circuit reversed the District Court on both grounds and remanded the case "for further factfinding on the question whether the trustee acted as the grantor's agent when he purchased the policies." It imposed a restrictive interpretation of its opinion in *Bel v. United States, supra,* emphasizing (691 F.2d at 788) that "In *Bel*, the decedent annually purchased an accidental death policy on his own life" and quoted the statement in *Bel* that "The decedent, and the decedent alone, beamed the accidental death policy at his children." The Court of Appeals went on to state (691 F.2d at 789)—

Bel holds that there is no practical difference between, on the one hand, purchasing a policy in one's own name and then transferring it, and on the other, purchasing the policy in someone else's name. These two acts, identical in practice, should therefore have the same tax consequences. *There can be a practical difference, however, between buying insurance for someone and giving that person money, even if the money is eventually used to purchase insurance.* Unlike Mr. Bel, Beverly Hope bought no policies and paid no premiums; she only gave cash, in trust, to her children. The government argues that the district court was correct in holding that the decedent and her husband provided the funds to the trustee, and that in substance it was the decedent who procured the policies and transferred them to the trust. We cannot accept this contention. Although Beverly Hope did fill out the initial application form for the insurance policies, the court could not conclude from this alone that, in the language of *Bel*, she "beamed the proceeds at her children." Such a conclusion would require a factual determination that the trustee, Byron A. Whitmarsh, had no discretion to invest the trust assets, *but was in fact controlled by the decedent, acting as the decedent's agent when he paid the premiums.* Nowhere, however, was it stipulated that the grantor controlled the trustee, or that the trustee's powers were confined. On the contrary, the trust agreement is irrevocable and vests broad powers in the trustee, particularly with regard to investments. Consequently, we hold that the district court erred when it decided, as a matter of law, that a transfer occurred for purposes of section 2035. We therefore reverse its holding and remand the case to the district court for further factfinding on the question whether the trustee acted as the grantor's agent when he purchased the policies. [Fn. ref. omitted. Emphasis added.]

We think it clear from the foregoing analysis that the ultimate questions in the instant case are: (1) Did the payment of the initial (and only) premium[11] within the proscribed 3-year period create the ownership rights in the policy on decedent's life; (2) did the decedent pay that premium? We think that both questions should be answered in the affirmative.

As to the first question, we note at the outset that the fact decedent may[12] not have formally acquired and then transferred the ownership rights in the policy is immaterial. *Detroit Bank & Trust Co. v. United States*, 467 F.2d at 967–968. The application for the policy specifically provided that the insurance was not to be in effect until that premium was paid. See p. 55 *supra*. Thus, it is clear that the payment of the premium created the ownership rights in the trustees. *Bel v. United States*, 452 F.2d at 690; *Estate of Coleman v. Commissioner*, 52 T.C. at 923.

If the decedent had paid the initial premium directly to the insurance company, the answer to the second question would have been self-evident and, as a consequence, the proceeds of the policy would clearly have been includable in the decedent's gross estate under section 2035. *First National Bank of Oregon v. United States, supra*.[13] Does it make a difference that, although decedent's funds were used, the payment of the premium was in fact made by the trustees by endorsement of decedent's check over to the insurance company? We think not, at least under the circumstances herein.[14] To be sure, under the trust agreement, the trustees were under no obligation to pay premiums on the insurance policy. But the check itself was in the exact amount of the premium and specified that it was for the premium payment (see p. 53

[11]We note that we do not have a situation involving payment of premiums in part by decedent and in part by another person. *Estate of Silverman v. Commissioner*, 61 T.C. 338 (1973), affd. 521 F.2d 574 (2d Cir. 1975).

[12]We use the word "may" because the trust agreement recites that the decedent transferred the policy to the trustees, although the policy was not yet in existence and the application specifies the trustees as owners and the parties have so stipulated.

[13]We are aware that our decision herein is in conflict with *Estate of Chapin v. Commissioner*, T.C. Memo. 1970–7.

[14]Several courts have suggested that it may be enough if the payment of the premium can be traced to decedent's funds. See *In re Estate of Silverman*, 521 F.2d 574 (2d Cir. 1975), affg. 61 T.C. 338 (1973); *Bel v. United States*, note 8 *supra*. Contra *Hope v. United States*, 691 F.2d 786 (5th Cir. 1982); *Estate of Tracy v. United States*, an unreported case (W.D. N.C. 1982, 51 AFTR 2d 83–1301, 82–2 USTC par. 13,499).

*supra*). Since it was the initial premium and since the trustees held no other assets, the fact of the matter is that no trust would have existed if that premium had not been paid. Consequently, we think that the trustees, as a matter of fiduciary duty, had no choice but to use the decedent's check (or the proceeds thereof, if they had cashed the decedent's check and used their own check (cf. *Hope v. United States, supra*)) to pay the premium and that they acted as decedent's agent in so doing. *Hope v. United States, supra; Detroit Bank & Trust Co. v. United States, supra.* They did not act "entirely on their own volition." See *Estate of Coleman v. Commissioner*, 52 T.C. at 923. Consequently, we conclude that decedent paid the initial premium. *Detroit Bank & Trust Co. v. United States, supra.* In so doing, decedent "created" the ownership rights in the policy in the trustees and transferred the policy to them within the meaning of section 2035.

Petitioners have laid great stress on our statement in *Estate of Coleman v. Commissioner, supra*, that "The only thing diverted from her [the decedent's] estate was the actual money paid." See 52 T.C. at 923. We have already commented on the fact that some Courts of Appeals have assumed that we intended this diversion theory to have universal application and observed that this is simply not so. See pp. 57 and 58 *supra*, and note 13 *supra*. Certainly, there is nothing in the diversion theory which precludes the finding of an agency relationship between the decedent and the formal payor of the premium. Consequently, we find petitioner's broad interpretation of *Coleman* without merit.

We hold that the proceeds of the insurance policy in question are includable in decedent's gross estate.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

---

WHITAKER, *J.*, concurring: While I concur in the result reached in this case, I do not agree with the Court's method of achieving that result. This is a relatively simple case, and it should be decided on that basis. It is not a satisfactory vehicle

for an effort to synthesize all the case law in this area (on the assumption, which is open to question, that such can be done or should be attempted). The majority's opinion will, I fear, carry us into an arena of "certitude" with which we, in the context of a different vehicle, might well find ourselves in disagreement.

The trust agreement between decedent and the trustees was entered into on July 26, 1977. It provides, in pertinent part:

> 1. Trust property. The Grantor, the initiator of a policy of insurance on his life issued by the Columbian Mutual Life Insurance Company, and known as policy #10010395, desiring to establish an insurance trust during the lifetimes of his wife, Eleanore, and of his children, Hiroko and Akira, with power in the Trustees upon the death of the Grantor to purchase assets from his estate, hereby assigns to the Trustees all his right, title, and interest in and to such policy of insurance, to be held by them in trust, and to receive the proceeds of such policy of insurance as and when they become due and payable and are paid, for the purposes and on the conditions set forth in this agreement. The Grantor reserves the right to add to this trust from time to time additional policies of insurance on his life which, when delivered to the Trustees, shall be held by them in every respect subject to the terms of this agreement.

On the same date, one of the trustees signed the application for the specified insurance policy as applicant and owner, while the decedent signed as the proposed insured. The trust was unfunded, and it appears to have been the parties' contemplation that it was to be funded only out of policy proceeds paid upon the decedent's death. When the policy was ready for issuance on September 8, 1977, the decedent furnished the trustee with a check in the amount of the initial premium, with language on the check specifying such use. Accordingly, the check was simply endorsed to the insurance company.

I am forced to believe that the recital in the trust agreement reflects the intentions of the parties and the facts existing on July 26, 1977. Clearly the decedent was the initiator of the insurance. Before the trust was created, he evidently had arranged with the insurance company or its agents for the policy and had obtained the policy number. Under these circumstances, I conclude that the decedent had also arranged for the insurance application and for its execution by the trustee. It is necessary to infer that he had also agreed to furnish funds for payment of the initial premium. No other

source of payment was available. Thus, each step of the instant plan—the trust formation, the insurance application and policy issuance, and the premium payment—was part of an integrated transaction arranged and regulated by the decedent.[1] How else could the draftsman of the trust agreement have had access to the policy number of the policy to be issued thereafter?

The facts here thus are clearly within the principles of *Bel v. United States*, 452 F.2d 683 (5th Cir. 1971), where the scope of the word "transfer" in section 2035 was given a broad interpretation consistent with the purpose of that section to bring "testamentary" dispositions made during the life of decedent into the estate. The Fifth Circuit in *Bel* endorsed the Supreme Court's language in *Chase National Bank v. United States*, 278 U.S. 327, 337 (1929), that—

"the word 'transfer' * * * cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. * * *" [*Bel v. United States*, 452 F.2d at 691.]

*Bel* went on to hold that a policy purchased by the decendent, who executed the insurance application and paid all of the premiums, "transferred" the policy to his children even thought they were owners of the policy ab initio. It based this conclusion on the rationale that there is no practical difference between purchasing a policy in one's own name and then transferring it, and purchasing the policy in someone else's name. *Bel v. United States, supra* at 692. It is the teaching of *Bel* that the fact that the trustee at all times was the owner of that policy is irrelevant under these circumstances. Thus, this is not a situation where, as in *Hope v. United States*, 691 F.2d

---

[1]The majority notes that the insurance policy application provided that insurance was not to be in effect until the premium was paid. (Majority opinion at 60.) It erroneously concludes, however, that "payment of the premium created the ownership rights in the trustees." That no insurance was actually in effect until payment of the premium is irrelevant to the question before us, which is whether *an interest* in the policy was transferred by decedent within 3 years of his death. Moreover, payment of the premium on Sept. 8, 1977, was merely the fruition of the parties' plan apparently conceived before and for all practical purposes executed on July 26, 1977. The payment therefore is appropriately viewed as relating back to the transactions that occurred on and probably prior to July 26, 1977, and the policy thereby had "life" on that earlier date for purposes of the instant discussion. That is the substance of the transaction.

786, 789 (5th Cir. 1982), the decedent "only gave cash, in trust, to her children." In the instant case, decedent initiated the policy, arranged for its issuance to the trustee, in the process assigning his interest to the trustee, and thereafter paid the initial premium.

The majority opinion takes great pains to discuss all of the major cases decided under section 2035 and to conclude that the "agency" theory of *Hope* and *Detroit Bank* is applicable. This discussion is not in point, is unnecessary, and thus is also subject to misinterpretation and undue expansion. It is unnecessary because, as discussed, decedent in substance made an outright transfer of the policy as recited in the trust agreement. Therefore, there is no need to isolate for discussion the significance of payment of the premiums by the decedent or whether or not the trustee's actions were as agent of decedent. There was but a single transaction, initiated and concluded by the decedent. We should not attempt to decide this case on other grounds. The majority places undue emphasis upon the final aspect of decedent's plan—the payment of premiums. The other aspects of the decedent's preconceived plan were in my opinion, of equal, if not greater, importance. Our decision in this case should encompass with equal emphasis all three steps of this transaction which when viewed together demonstrate a transfer of a policy of insurance by decedent within the meaning of section 2035—without the intervention of a hypothetical agency.

FAY, GOFFE, WILES, PARKER, and CLAPP, *JJ.*, agree with this concurring opinion.